## Case No. 15,555.

### UNITED STATES v. LANCASTER.

[7 Biss. 440; [1] 9 Chi. Leg. News, 307.]

Circuit Court, N. D. Illinois. May, 1877.

INSANITY—BURDEN OF PROOF—PRACTICE.

1. Upon an inquisition of insanity upon a motion for a new trial after verdict of guilty of perjury, the question is the same as if raised when the prisoner was called to plead.

[Cited in U. S. v. De Quilfeldt, 5 Fed. 279.]

2. Upon such an inquisition the question to be decided is, whether the defendant was incapable of comprehending the dangerous position in which he was placed, and of taking intelligent measures to meet it.

3. The burden of proof of insanity is upon the defendant, yet he should have the benefit of any reasonable doubt.

4. In an inquisition of insanity the counsel for the prisoner should open and close the case to the jury.

Mark Bangs, U. S. Atty.
Leonard Swett, for defendant.

BLODGETT, District Judge (charging jury). On the 14th of February last, Alvin N. Lancaster was put upon his trial in this court, on an indictment for the crime of perjury. The trial resulted in a verdict of guilty, and a motion was made for a new trial. One of the grounds of this motion was based upon the suggestion that at the time of his trial the defendant was of unsound mind, and therefore unable to properly plead to the charge or conduct his defense. This suggestion was sustained by such affidavits and other proofs as, in my estimation, made it necessary to the ends of justice that the fact should be investigated by a jury. And you have been impaneled to inquire into and pass upon the question.

There is no controverted question of law in the case, and the inquiry involves only a question of fact, of which you are the proper and sole judges. The question is, was the prisoner, at the time of his trial, so far of unsound mind as to be incapable of comprehending the nature of the charge against him, and of properly presenting his defense? The testimony is material to be considered only so far as it tends to throw light on this question, and naturally divides itself into two classes:

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

1. The testimony of witnesses who have known the prisoner for a longer or shorter time, and have detailed facts in regard to his history, his business enterprises, and his domestic and financial troubles.

2. The testimony of professional men who have given special attention to the investigation of mental and nervous diseases, and who, by reason of their skill and attainments are deemed in law qualified to give an opinion as experts, or persons of skill upon the question before you.

You have heard from the various witnesses who have known the defendant, some of them for many years, many facts in regard to his previous life; his business, his temperament, and various vicissitudes and incidents in his career; his successes and failures, and the alleged changes which, it is claimed, have taken place in him, and from which you are asked to infer that he has become insane.

There are no special contradictions or discrepancies in this testimony. The witnesses who have been called on both sides agree in many of the substantial matters of fact. It may be considered as conceded that defendant now is about 50 years of age; that for many years previous to 1873 he had been an extensive and successful operator in real estate, and had accumulated a large amount of property, his property being estimated as worth, in 1873, over and above incumbrances, from $150,000 to $250,000; that he possessed unusual capacity as a business man —was prompt and rapid in his conduct of negotiations and business affairs, and always exhibited a quick and irascible temper and a somewhat imperious, jealous and exacting disposition; that in 1869 he lost his wife, and in 1870 his children died, and he showed immediately after this bereavement great grief, and had a very demonstrative way of displaying it.

Sometime in the summer of 1873, a Miss Warren, of New York City, brought some suits against him, for the collection of about $12,000, which she claimed he owed her. He resisted this claim, and insisted that it was prosecuted for purposes of blackmail, and charged all persons who took part in its prosecution as conspiring against him. And it seems to have become an almost fixed habit to indulge in violent denunciations of, and threats toward, all who had any part in the prosecution of these suits. His property has melted away, and he is now impoverished, and instead of being wealthy, is really a poor man. These facts are admitted, or at least not disputed.

Other facts which may be said to be proved but are not admitted: That his mind is engrossed in trifles; he has become indifferent to business; has acted in a strange and unusual manner; become eccentric in his conduct; and although indicted for a grave crime, did not appear to realize his danger, and made no preparation for his defense, although often urged to do so by his friends. Eminent medical men, from examinations and from knowledge of the man, give an opinion, as a matter of skill, that he is insane.

From all this group of facts, you are asked to deduce the conclusion, that the prisoner was, at the time of trial, insane, the theory being, that the proof shows that since the death of his children, his mind has been giving way, until he is now and was at the time of his trial, actually insane, or so far in the incipient stages of insanity as to render him incapable of properly appreciating and meeting the peril in which he was placed.

On the part of the government it is contended, and supported by the evidence of eminent medical men, that while they do not deny many of the facts testified to, they deny that they necessarily or fairly establish the allegation of insanity, but insist that all the incidents and facts stated in the testimony, only show him to be a man of violent passions, who has given way in latter years to a sort of ungovernable rage toward those who were endeavoring to enforce the collection of a valid debt from him; that he was always quick tempered and jealous, and has only exhibited to an aggravated degree his natural character toward those whom he disliked, and is simulating or putting on the appearance of insanity to avoid sentence.

The real question, as I have before said, is, whether the evidence satisfies you that this man's mind had so far broken down and lost its texture that he was at the time of his trial incapable of comprehending the dangerous predicament in which he was placed, and taking intelligent measures to meet it? Did he realize the gravity of the offense with which he was charged, as he would if in the possession of his ordinary mental faculties? Not that he should have been so much affected by it as some other men would [but did he treat this case as he would] [2] if he had been in possession of his ordinary mental vigor and coherence of ideas?

All the evidence tends to show that he was at one time, and not many years ago, a man of clear mental perceptions, understood the ordinary obligations which one man owes to another and to society, and while he may have been shrewd and sharp at a bargain, and perhaps exacting in enforcing what he deemed a legal or business advantage over those with whom he was dealing, yet there is no proof but that he recognized the ordinary moral and legal obligations of business, and was as truthful and upright as ordinary men in their dealings. And I think it may be considered as proven, that in the last two or three years, since the loss of his children, to some ex-

—————

[2] [From 9 Chi. Leg. News, 307.]

tent, and since the commencement of his troubles with Miss Warren in a more palpable degree, his most intimate friends have noticed a marked change in his manner, conduct and habits of thought.

Does the proof satisfy you that the change in the man shows that he has become insane, or so far insane as to be incapable of properly caring for himself? And a single act of eccentricity or of irrational conduct is not evidence of insanity, but a group or series of unnatural acts may properly be considered as tending to prove insanity. Or were these acts the result of his giving way· to a naturally violent temper and jealous disposition? Were these exhibitions the result of insanity, or mere neglect to properly rule his own spirit? Has he simulated insanity, or was he in fact insane at the time of his trial?

The name of the disease is not important if the man is really crazy. It makes no difference whether it is called paralysis of the brain, or paresis—or by some other name—if the fact of insanity exists. Doctors may disagree as to a diagnosis of disease, but we have nothing to do with mere names.

While the burden of proof may be said to be on the defendant, to satisfy you that he is in fact insane, yet, if the proof, when all considered together, leaves a reasonable doubt upon your mind of this man's sanity, he should have the benefit of the doubt. That is to say, no man should be considered as a proper subject for criminal prosecution, of whose sanity there is ground for a reasonable doubt.

The question is not as stated by counsel for the prisoner, whether the defendant has had a fair trial, but whether he was in such a mental condition as to be capable of appreciating the exigency and properly preparing for it. If he was sane, he ought to have made proper preparations for his trial. If he was so insane as not to comprehend the peril he was in, or the crime he was charged to have committed, then he ought not to have been tried, and if he is still so insane, he ought not to be sentenced for the crime of which he has been found guilty by the jury.

This case should be considered in the same light by you as if it had not been tried. Suppose his trial was now impending, and his counsel should come into court and suggest that his client was so far insane as that he ought not to be tried, and the court as a preliminary step, had ordered a jury to be impaneled to try the question of his sanity or insanity, the duty of that jury would be precisely what yours is now—that is, to inquire into and find whether the defendant was so far insane as to be incapable of realizing the peril in which he was placed, and taking such steps as a prudent man, under the circumstances, would have taken to prepare for his trial, and whether that insane condition still continues. If found insane by

your verdict, the verdict now standing against him will be set aside.

The jury found the prisoner to have been insane at the time of his trial on the indictment.

NOTE. On calling the matter for trial, the question arose as to which side should open the case. The court ruled that counsel for ·the prisoner should open and close the case to the jury. The question has been decided both ways in England, and seems to have been left in doubt. See 1 Russ. Crimes (9th Ed.) p. 29.