[No. 19293. Department One. August 25, 1925.]

THE STATE OF WASHINGTON, *Respondent*, v. W. R. SCHRADER, *Appellant.*[1]

CRIMINAL LAW (195-1)—PRELIMINARY PROCEEDINGS—DETERMINATION OF INSANITY—EFFECT OF PLEA. In the absence of any statute authorizing a plea of insanity at the time of the trial and providing for its disposition, an accused is not, by his plea of sanity at the time of the trial, precluded from moving for a new trial on the ground of insanity when tried (overruled on rehearing).

SAME (195-1)—POWER TO DETERMINE INSANITY AT TIME OF TRIAL. The courts have inherent power to ascertain whether one accused of crime is insane at the time he is put upon trial.

SAME (195-1)—DETERMINATION—DISCRETION—REVIEW. Where accused's counsel put in a plea that accused was insane at the time of the trial, and it appears that the court was in doubt about it, it is an abuse of, or failure to exercise, discretion to refuse to inquire into his present sanity because he had pleaded that he was then sane.

SAME (195-1)—DETERMINATION—INSTRUCTIONS. The present sanity of accused is not submitted to the jury by instructions that an acquittal would not be justified if accused was sane when he committed the offense, and had become insane thereafter and that, in such case, the jury will make a further finding as to his present mental condition.

SAME (195-1) — DETERMINATION OF INSANITY — GRANT OF NEW TRIAL. Where the accused was found by the jury to be sane when he committed the offense, a new trial should be denied if he was sane at the time of the trial, and granted if he was insane at that time.

ON REHEARING.

CRIMINAL LAW (195-1)—PRELIMINARY PROCEEDINGS—DETERMINATION OF INSANITY—STATUTES—CONSTRUCTION. Where accused pleaded his sanity at the time of the trial, and took the verdict of the jury on his guilt he thereby waived the right to subsequently have the question of his sanity at that time inquired into; in view of Rem. Comp. Stat., § 2174, providing that accused may, in person or by counsel, plead (1) his insanity at the time of the commission of the offense, or (2) that such insanity still exists, or (3) that he has since recovered.

[1]Reported in 238 Pac. 617.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered January 2, 1925, upon a trial and conviction of murder in the second degree, after denying motions for a new trial on the ground of the insanity of the accused at the time of the trial, and refusing to try the issue of insanity. Affirmed.

*Wm. A. Johnson*, for appellant.

*C. T. Roscoe, Charles R. Denney*, and *Joseph H. Smith*, for respondent.

Bridges, J.—This case is about the sanity of a defendant at the time of his trial, when the jury found he was sane when he committed the crime with which he was charged. Its history is very unusual.

In November, 1913, the prosecuting attorney of Snohomish county filed an information charging the appellant with the crime of the murder of his wife. On the 12th of that month, he was arraigned but stood mute, and the court entered a plea of not guilty for him and appointed an attorney to defend him. On the following day, his attorney entered an additional plea to the effect that, at the time of the alleged offense, he was insane, but that since that date he had become sane. There having arisen some question as to the appellant's sanity at the time of the trial, the prosecuting attorney asked the court to make an examination into that matter, but it declined to do so. The case came on for trial on the 19th of November. During the trial, the question of appellant's insanity at that time arose in various ways. The court then appointed a commission of three physicians to examine the appellant and report the condition of his mind. For some reason, this commission did not make any report, and the trial continued.

The jury, on November 22, returned a simple verdict of guilty of murder in the second degree. In due course, the attorney for the appellant moved for a new trial on various grounds and, as part of his motion, made a showing by his own affidavit that, at the time of the trial, the appellant was insane and asked the court to inquire into his sanity as of that date. The court then appointed three physicians to examine him. The majority of these reported that he was insane on December 9, at the time of the examination. This was on December 9th. The court adopted the view of the majority of the physicians, and, refusing to sentence the appellant, instead adjudged him insane and sent him to the state hospital for the insane. This, being on December 9, would be a little less than three weeks after the verdict. The court overruled appellant's motion for a new trial.

Appellant remained in the state hospital until 1917, when he either escaped or was discharged as cured. If he escaped, the authorities in charge of the hospital very shortly afterwards reported his discharge as cured. He then went to New York state, where he remained until the early part of this year, when he was brought back to the state of Washington for sentence. His attorney again appeared for him and filed another motion for a new trial, based, for the most part, on the ground that appellant was insane at the time of the previous trial. This motion was supported by the affidavit of appellant himself to the effect that he had no knowledge whatsoever concerning the trial, examination for sanity, or commitment to the hospital; that, during all that time, his mind was a blank. The court denied the second motion for a new trial and entered judgment sentencing the appellant to the state penitentiary for a period of not less than twenty nor more

than thirty-five years.   The appeal is from this judgment.

Appellant contends that he has never had a trial in accordance with the constitutions of the state and of the United States, because of his insanity at the time of the trial.   The jury, by finding appellant guilty under the instructions, found him to have been sane at the time of the commission of the crime.

The question is, shall he have a new trial.

In 1907 the legislature passed a more or less comprehensive act with reference to the criminally insane. Laws of 1907, p. 33.   This statute has been carried in Rem. Comp. Stat., as §§ 2173-2176 and 6969-6974 [P. C. §§ 9293-9296].   Section 2 of that act provides that:

"When it is desired to interpose the defense of insanity or mental irresponsibility on behalf of one charged with a crime, the defendant, his counsel or other person authorized by law to appear and act for him, shall at the time of pleading to the information or indictment file a plea in writing in addition to the plea or pleas required or permitted by other laws than this, setting up (1) his insanity or mental irresponsibility at the time of the commission of the crime charged, and (2) whether the insanity or mental irresponsibility still exists, or (3) whether the defendant has become sane or mentally responsible between the time of the commission of the crime and the time of the trial.   The plea may be interposed at any time thereafter, before the submission of the cause to the jury, if it be proven that the insanity or mental irresponsibility of the defendant at the time of the crime was not before known to any person authorized to interpose a plea."

Section 3 provides that:

"If the plea of insanity or mental irresponsibility be interposed, and evidence upon that issue be given, the court shall instruct the jury when giving the charge, that in case a verdict of acquittal of the crime charged be returned, they shall also return special verdicts

finding (1) whether the defendant committed the crime and if so, (2) whether they acquit him because of his insanity or mental irresponsibility at the time of its commission, and (3) whether the insanity or mental irresponsibility continues and exists at the time of the trial, . . ."

Section 4 provides that:

"If the jury find . . . the defendant committed the crime but acquit him because of insanity at the time of its commission and that before the trial he had become sane, he shall be discharged, but if such insanity continues to exist then the court shall commit the defendant as a criminally insane person . . ."

There are many things in the act tending to show that the legislature had in mind only a situation where the jury might find the person charged with the crime was insane at the time of its commission, and that the provisions with reference to present sanity or insanity referred back to the question of sanity at the time of the commission of the crime. But if it be conceded that the statute authorizes the plea which was made here, to wit, insanity at the time of the commission of the offense and sanity at the time of the trial, it furnishes no procedure whatever for the determination of the matter of the present mental condition of the defendant, if the jury find he was sane when he committed the act. Section 3, which covers the submission of the matter to the jury, simply provides that the jury shall determine whether the crime was committed, and if so, whether the defendant is acquitted because of insanity at the time of the commission of the crime and whether the insanity which then existed continues at the time of the trial. In other words, the statute does not provide for a determination of the mental condition of the defendant at the time of trial, if the jury find, as in this case, that the person charged committed the crime and was sane at the time of committing it. Present

sanity is to be inquired into only in the event he was insane at the time he committed the crime.

The respondent cites the case of *State v. Wilson,* 69 Wash. 235, 124 Pac. 1125, as holding to the contrary, and it must be admitted that there are expressions there which would seem to indicate that the court was of the opinion that the statute furnished a complete method of determining the mental condition of the defendant at the time of the trial, regardless of his condition at the time of committing the crime. But such part of the opinion as seems to so hold was probably not necessary to the decision of the case or, if it were, we are satisfied that in that respect we were in error.

But it is contended by the state that, in any event, the statutes quoted provide for just such a plea as appellant made, even though it does not provide for a determination of his sanity at the time of the trial when it is found that he was sane at the time of committing the offense; and that, since the appellant plead his sanity at the time of the trial, the statute making it his duty to do so, he has been afforded a fair trial and due process of law even though he were then insane. This doctrine seems to be supported by a few cases. *Baughn v. State,* 38 L. R. A. 577; *State v. Wilson, supra.*

How may an insane man plead sanity or insanity, or for that matter make any kind of plea? Is it possible that, if a raving maniac charged with crime arises in court at the time of the trial and pleads his present sanity, the court must abide by it; or that he may not, after he has recovered his sanity, recant his plea, simply because the statute says that the plea of sanity at the time of the trial must or may be plead by the defendant? Let conscience answer this question. At all times, except during the "bloody reign of Henry VIII" (Blackstone) it has been held that an insane man may not be brought to trial. A statute which would under-

take to hold an insane man to his plea would be unconstitutional. Indeed, we so held in the case of *State ex rel. Mackintosh v. Superior Court,* 45 Wash. 248, 88 Pac. 207, for there we said:

"There is no statute directing that a person while insane may be tried for murder. Such a statute, if enacted, would be in conflict with the Federal and state constitutions and the well-established principles of the common law."

But there is another reason, previously suggested, why the appellant should not necessarily be held to his plea of sanity at the time of the trial; and that is that, while the statute may authorize such a plea, it does not provide for its disposition, when the jury find the defendant was sane when he committed the crime. We must hold that there is no statute covering the question involved in this case.

But in the absence of a statute, the court is not powerless to determine whether the defendant is insane and should not for that reason be tried. It has an inherent right to refuse to try a defendant whom it fears or believes is of unsound mind. Indeed, in the case of *State ex rel. Mackintosh v. Superior Court, supra,* we expressly so held, for there we said that,

"Criminal courts are possessed of an inherent power to ascertain whether one accused of crime is sane and able to avail himself of all of his constitutional rights during the progress of his trial."

That view is sustained by all of the authorities. They are to the effect that, where the trial court by any means is convinced that the defendant at the time of the trial is insane, or if not convinced, feels that there is a strong probability of his insanity, it is not only within his power, but it is his duty, to suspend the trial and inquire into the defendant's sanity. Whether he will so do rests largely in his discretion.

Ordinarily, if he concludes that the defendant is sane, even though his attorney and others claim his insanity, his action will not be reversed by the appellate court unless that court is convinced that the trial court abused its discretion. We do not deem it necessary to quote from the authorities on this question, and will do nothing more than cite a few: *Howie v. State,* 83 South. (Miss.) 158, 10 A. L. R. 205 and note; *State v. Harrison,* 18 L. R. A. 224; *Baughn v. State, supra,* and very extensive note in connection therewith; 22 Cyc. 1213; *State v. Peterson,* 90 Wash. 479, 156 Pac. 542; *State v. Jacob,* 131 Wash. 490, 230 Pac. 647.

The question then arises whether the trial court erred in failing to investigate the appellant's insanity at the time of the trial. If we were convinced that the court failed to determine that question because he believed the appellant to be sane at that time, we would, without question, refuse to grant any relief in this action. But we are not so convinced. A careful reading of the whole record indicates to us that the court refused to examine into the appellant's present sanity, because he had plead that he was then sane and the court felt that he was bound by that plea. If so, he did not exercise his discretion.

There is much in the record that would tend to indicate that the court had, at least, grave doubts as to the present sanity of the appellant. When called to plead, he stood mute. Although charged with murder in the first degree, he had no attorney and did not ask for one. The attorney himself put in the plea of present sanity. He stated to the court that he did so because he did not wish to take the responsibility of pleading his client into the hospital for the insane. The appellant, although the charge against him was grave, did not take the witness stand, and it is said in the briefs that he took no active part in the trial. About

the beginning of the trial, the court appointed a commission of three physicians to examine him as to his present sanity. But for some reason they did not report. Within two or three weeks after the verdict of guilty had been returned, the court again appointed an insanity commission, which reported that the appellant was then insane and did not know what was going on about him. The court adopted this report and entered a judgment sending the accused to the state hospital for the insane. During the trial, a physician, a witness for appellant, testified that he was then insane. There is much more in the record which tends to indicate that the trial judge was in doubt as to the appellant's sanity. Under these circumstances, it seems to us that it was his duty to suspend the trial and at once inquire into the defendant's present sanity.

But the respondent insists that the court submitted to the jury that question. In this it is mistaken. By its instruction No. 19, the court told the jury that, if they should

". . . find from the evidence, if any, at the time defendant committed the act, if he committed it, he was sane . . . then I instruct you that, if you should further believe from the evidence that the defendant has become sane since the commission of the act, if you find that he committed it, that would not be sufficient to justify you in acquitting him on the ground of insanity, *but if you should find that he was insane or mentally irresponsible at the time of the commission of the act,* then you will make a further finding with reference to his present mental condition as hereinafter instructed."

The substance of this instruction is that, if the jury believe that the appellant committed the act while sane but had become insane thereafter, such insanity would not justify an acquittal; and by instruction No. 27 the court told the jury that, if it found appellant to be

guilty but acquitted him by reason of insanity at the time of the commission of the crime

". . . then you should also state whether the insanity or mental irresponsibility still exists or, if it does not exist, whether there is such likelihood of a relapse or recurrence of such mental irresponsibility that the defendant is not a safe person to be at large."

This instruction only means that, if the defendant be acquitted because of insanity at the time of the commission of the crime, then the question of present sanity should be inquired into. These are the only instructions given on this subject. They did not submit to the jury the question whether appellant was sane or insane at the time of the trial, should the jury find that he was sane at the time of the commission of the crime. Indeed, the statement of facts show that the court, in referring to this matter, said:

"I think the record will show that [that is, that defendant's attorney had plead present sanity] and for that reason I did not permit the jury to pass on that [the present sanity]."

We have no doubt that the court, exercising its inherent power, would have had the right to submit to the same jury the question of appellant's sanity at the time of the trial.

It has been many years since this crime was committed. It is probable that some of the witnesses, both for the plaintiff and the defendant, have either died or disappeared. It would probably work a great hardship on all parties to require a retrial at this time. If the appellant was sane at the time he was tried, then he had a fair trial. This matter can now be determined; and if it turn out that he was sane at the time of the trial, the court should deny any re-trial. But if it be determined that, at that time he was insane, the ver-

dict and judgment of sentence should be set aside and a new trial on the merits granted. This was the proceeding followed in *United States v. Lancaster,* 26 Fed. Cas. 852.

We have not overlooked respondent's motion to dismiss the appeal. It is based on the ground that appellant escaped from the hospital for the insane, left the jurisdiction of the court, and remained away for a number of years. *State v. Handy,* 27 Wash. 469, 67 Pac. 1094, and *Jones v. Jones,* 75 Wash. 50, 134 Pac. 528, are cited in support of the motion. These cases are not controlling. In the first case cited, the facts were that the appellant had escaped from jail after his conviction and pending his appeal to this court, and at the time of the hearing he was still at large. We said:

"It has been uniformly decided that an appellate court would refuse to hear a criminal case on an appeal or writ of error where appellant or plaintiff in error has escaped and is not within the jurisdiction and control of the court below, either actually by being in custody, or constructively by being out on bail."

The same doctrine is laid down in the second case cited. In the case at bar, it is not clear whether appellant escaped from the hospital or was discharged and thus given his liberty. But in any event, he was returned to the jurisdiction of the court before sentence was pronounced, and when the initiatory steps of appeal were taken. He is still within the jurisdiction of the court. Under these circumstances, there is no ground upon which the appeal can be dismissed.

The judgment is remanded to the trial court with instructions to try out the question of appellant's sanity at the time of his former trial; and if it be found that he was then sane, the court should put the sentence into effect; but if it be found that he was then insane, the

court should set aside the verdict and its previous judgment and grant the motion for a new trial.

TOLMAN, C. J., PARKER, MITCHELL, and ASKREN, JJ., concur.

## ON REHEARING.

[*En Banc*, January 29, 1926.]

MAIN, J.—The facts in this case are fully set out in the opinion of the department of the court which first heard it. After the opinion was filed, a petition for rehearing was presented and granted and the case was reheard *En Banc*.

The controlling question, as we now view it, is whether the defendant, not having plead insanity at the time of the trial, but having expressly plead sanity at that time, can now have his then sanity determined.

Section 2174, Rem. Comp Stat., provides:

"When it is desired to interpose the defense of insanity or mental irresponsibility on behalf of one charged with a crime, the defendant, his counsel or other person authorized by law to appear and act for him, shall at the time of pleading to the information or indictment file a plea in writing in addition to the plea or pleas required or permitted by other laws than this, setting up (1) his insanity or mental irresponsibility at the time of the commission of the crime charged, and (2) whether the insanity or mental irresponsibility still exists, or (3) whether the defendant has become sane or mentally responsible between the · time of the commission of the crime and the time of the trial. The plea may be interposed at any time thereafter, before the submission of the cause to the jury, if it be proven that the insanity or mental irresponsibility of the defendant at the time of the crime was not before known to any person authorized to interpose a plea."

It will be observed that by this statute, when it is desired to interpose the defense of insanity, the de-

fendant, his counsel or other person authorized by law to appear and act for him, shall, at the time of pleading to the information or indictment, file a plea in writing, in addition to the plea or pleas required or permitted by other laws than this, setting up "(1) his insanity or mental irresponsibility at the time of the commission of the crime charged, and (2) whether the insanity or mental irresponsibility still exists . . ."

By the statute, the counsel for the defendant is expressly authorized to enter the plea. In the present case, the plea was in writing that the defendant was insane at the time of the commission of the offense, but that, at the time of the trial, was mentally responsible and sane. Some time subsequent to the time when the jury, by its verdict, had found the defendant guilty of the offense with which he was charged, which was, in effect, holding that he was sane at the time it was committed, he sought, by his application, to have the question of his sanity at the time of the trial and the rendition of the verdict inquired into, and that is the question now presented for review. It must be kept in mind that the plea was expressly made, under authority given by the statute, that the defendant was sane at the time of the trial. Having plead his sanity at the time of the trial and taken the verdict of the jury on his guilt, he thereby waived the right to subsequently have the question of his sanity inquired into at that time. This is distinctly held in the case of *State v. Wilson,* 69 Wash. 235, 124 Pac. 1125. It was there said:

"Counsel relies upon the elementary principle that an insane person shall not be put to trial for his life or liberty, and now contends that, if he can show the defendant was insane at the time of the trial, his liberty, subject of course to incarceration for present insanity, can be obtained by order of the court. The case of *State ex rel. Mackintosh v. Superior Court,* 45 Wash.

248, 88 Pac. 207, is relied on, but that case can have no controlling force here, because the application for a commission was made before the trial, and for the further reason that, since that decision was rendered, the legislature has taken notice of the lack of any statute defining a procedure in such cases, and by express enactment has provided for the manner of trying the question of insanity at the time of the trial. Rem. & Bal. Code, § 2174, provides that this may be determined by the jury under a special plea. Succeeding sections point the proper procedure in the event that the jury finds mental irresponsibility at such time. These statutes are ample to protect the rights of a defendant, and the fact that such plea was not interposed warrants us in holding that the question was waived. In our judgment, this holding does no violence to the rule that an insane person shall not be put to trial; for, as we read the statutes, although that fact were proven, it would not operate to discharge the defendant, but only work a continuance until such time as, in the judgment of the prosecuting officers, his reason became restored. We think the plain inference to be drawn from a reading of § 2174 is that such plea must be interposed before the case is submitted to the jury; and that, if it comes thereafter, it is too late."

What the procedure would be, where a defendant pleads insanity at the time of the commission of the offense and also at the time of the trial, and the jury finds him sane at the time of the commission of the offense, it is not necessary here to determine, for that question is not involved in this case because, as stated, there was no such plea. Had defendant, either before or during the trial, through his counsel or other person authorized to act for him, requested that the court appoint a commission to inquire into his then insanity, and the court had refused, a different question would be presented. Defendant was ably represented by

counsel. He had a fair trial, and his legal rights have been fully protected.

It follows that the judgment must be affirmed.

TOLMAN, C. J., MITCHELL, FULLERTON, HOLCOMB, and MACKINTOSH, JJ., concur.