[No. 22073. *En Banc.* April 7, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR
SCHAFER, *Appellant.*[1]

[1]Reported in 286 Pac. 833.

*O. M. Nelson* and *Emmett G. Lenihan,* for appellant.
*J. W. Graham,* for respondent.

HOLCOMB, J.—This case was before a Department of this court on certain motions in which an opinion was filed in *State v. Schafer,* 154 Wash. 322, 282 Pac. 55.

Most of the matters of record were there referred to and the issues there stated. In the opinion therein it was not stated that there had been a change and substitution of attorneys of record for appellant after the appeal was taken and a short bill of exceptions served, certified and filed.

By reason of the decision of the court in that matter, the entire statement of facts could not be certified and brought to this court. We, therefore, are now compelled to consider the case wholly upon the short bill of exceptions and the transcript certified by the clerk.

A complete review of the trial being infeasible, since this is a capital case involving the supreme penalty, such questions as are reviewable have been

242

examined with extreme care, with no disposition "to draw the line too closely and prefer to accord the condemned man every possible opportunity to show error to his prejudice" (*State v. Bailey*, 147 Wash. 411, 266 Pac. 163); being persuaded, however, that the crucial questions on this appeal are probably determined as justly and correctly as if the whole record were here.

Inasmuch as the entire record is not here, some of the assignments made by present counsel for appellant, such as errors in the instructions by the trial court, cannot now be considered. *State v. Callaghan*, 107 Wash. 486, 182 Pac. 594; *State v. Greenwald*, 129 Wash. 159, 224 Pac. 386; *Staples v. Esary*, 130 Wash. 521, 228 Pac. 514; *State v. Harder*, 130 Wash. 367, 227 Pac. 501.

Another assignment of error is that the clerk's record does not affirmatively show the presence of appellant at all stages of the trial.

An examination of the record discloses that it was rather fragmentary and imperfect. It does, however, affirmatively show the personal presence of appellant at the opening of the trial on December 17, 1928, with his attorney. It also shows his personal presence with his attorney at the reception of the verdict and also at the time of being sentenced.

It is earnestly contended that this falls far short of the requirements of our constitution, Art. I, § 22, and of our statute, Rem. Comp. Stat., § 2145.

Those same constitutional and statutory provisions were considered by us in *State v. Bailey*, 147 Wash. 411, 266 Pac. 163, also a capital case, where the supreme penalty had been imposed and where there was no affirmative showing contrary to the record. Our holding in *State v. Costello*, 29 Wash. 366, 69 Pac. 1099, a felony, but not a capital case, to the effect that, where the minute entries of the clerk showed the ac-

cused to be present at the beginning of the trial, the presumption must follow that he was present throughout the remainder of the trial unless there was an affirmative showing to the contrary, governed in that case. Other cases from this court, where there had been admitted absences of the accused at certain stages of the trial, were there held to be not controlling. It was also there held that the cases cited from other jurisdictions under peculiar constitutional or statutory enactments were not controlling here.

*Shapoonmash v. United States,* 1 Wash. Terr. 188, a decision concurred in by two judges and dissented from by one of the territorial judges, is quoted and strongly relied upon by appellant. But this court seems never to have later approved the holding in that case, but has rather followed the reasoning of the dissenting judge therein. There was no affirmative showing here on behalf of appellant of his absence at any stage of the trial.

We feel bound by our prior decisions above cited as deciding this contention.

■■ The denial of the motion for change of venue made by appellant before trial, supported by an affidavit of his attorney which set out an editorial contained in the leading newspaper of Mason county tending to show a high state of feeling against appellant, is forcefully and insistently argued as a most prejudicial error.

The supporting affidavit, among other things, in addition to setting forth the editorial above mentioned, stated

"That affiant has talked with the sheriff and prosecuting attorney of Mason county and they have given affiant reason to believe that there is considerable excitement and prejudice against the defendant in said county. In fact the excitement and prejudice is so tense that these officers have deemed it advisable to

keep the defendant in a jail outside of Mason county; that as affiant is informed and believes that said defendant is still kept in a jail outside of Mason county."

This motion was heard by the trial court on December 15, 1928, which was a Saturday and the cause was set for trial before a jury on the following Monday, December 17. The affidavit was not controverted by counsel for the state. The order of the trial court denying the motion is as follows:

"This cause coming on for hearing on the 15th day of December, 1928, upon motion of defendant for change of venue, and it appearing that the motion was filed at the time of argument, and copy served upon attorney for plaintiff just prior to argument by defendant, and no opportunity available to plaintiff to file counter-affidavits, and it further appearing that all witnesses for both plaintiff and defendant had theretofore been subpoenaed for trial of said cause, and that defendant was fully aware of all the alleged facts stated in his affidavit in support of said motion, long prior to the time when said cause was set for trial, and it further appearing that the defense in said cause is alleged insanity, now therefore, the said motion is denied. Exception allowed defendant."

It is conceded that, under the laws and decisions in this state, it is a matter of sound discretion of the trial court to grant or deny a change of venue because of local prejudice to another county. It is argued, however, that, from the words of the order denying the motion, it was not through the exercise of the court's discretion in the belief that no prejudice actually existed and that appellant could actually have a fair trial in Mason county, but that the ruling was made solely because of the late time of presenting it to the court.

In *State v. Hillman*, 42 Wash. 615, 85 Pac. 63, where affidavits containing newspaper articles showing prejudice were unanswered by the state, and certain outside cases to the effect that, where a motion for change

of venue supported by affidavits showing hostility and prejudice against a defendant is filed and are unanswered, it was held there it will be presumed that no showing of the absence of hostility and prejudice could be produced and that the hostility and prejudice actually existed. Other cases referring to the non-resistance by affidavit or counter-showing where there was such counter-showing are also discussed in the brief.

We take judicial notice of the facts that, while Mason county is large geographically, its population is comparatively small. It is to be presumed that the trial judge, who is one of the regular judges presiding over the superior court in that county, is well acquainted with the population and conditions existing in that county.

The *voir dire* examination of the jurors to try this cause was not brought up. There is no showing either by the record showing what difficulty was experienced in procuring a jury to try the case, the number of peremptory challenges necessary to be exercised, nor any other proof made by appellant that he was not able to secure a fair and impartial jury.

The case of *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41, is practically decisive of this question. There, in a prosecution arising out of violations of the state banking law by an officer of the bank, there was an uncontroverted affidavit on the part of the defendant tending to show great prejudice in certain parts of the county against the officers generally of the bank which had failed, and its failure affected a great number of stockholders and many more depositors. Undoubtedly it was a matter of very great public interest and concern. We there said:

"This affidavit is uncontroverted and contains recitals from which it can be inferred that prejudice to

some extent existed in certain parts of the county against the officers generally of the particular bank, and were the question one on which this court could exercise an independent judgment, we are free to say that it would be permissible to reach a conclusion different from that reached by the trial court. But the question is not one of the first instance in this court. By the express provisions of the statute (Rem. Comp. Stat., §§ 2018, 2019), the question is vested in the first instance in the discretion of the trial court, and we can review its ruling only for gross abuse. As we said in *State v. Welty,* 65 Wash. 244, 118 Pac. 9, and repeated in part in the later case of *State v. Wright,* 97 Wash. 304, 166 Pac. 645:

" 'It is apparent, from a reading of these sections, that the granting or denying of the change of venue is a matter resting entirely in the sound, judicial discretion of the trial judge. Such being the statute, the ruling of the trial court cannot be reversed upon appeal, unless the record contains some evidence of its gross abuse, or it is shown that the court's ruling was arbitrary. Such has been our holding whenever such a question has been before us. [Citing authorities] Such also is the general rule in construing statutes of like import. . . . The rule is not only based upon the statute, but is founded in reason. The trial judge is generally familiar with the local situation; he knows the prevailing sentiment of the people, in so far as it finds oft repeated expression; he knows all the facts and circumstances proper to be considered in determining the matter; he may know the persons who make affidavits suggesting undue excitement or prejudice and can properly estimate the weight to be given such affidavits. A judicial discretion, exercised under such circumstances, should not be interfered with, unless its abuse is so clearly manifest as to call for reversal.'

"Looking to the record, we find nothing warranting the holding that that court grossly abused its discretion. . . . there is no showing that the appellant did not obtain an impartial jury; at least, nothing of the *voir dire* examination of the jury is in the record, nor is it shown that the appellant, in the selection of

the jury, was compelled to exhaust his peremptory challenges. The purpose of a change of venue is to secure to the accused a trial before an impartial jury, and if the record does not disclose affirmatively that the accused did not have such a trial, it is very persuasive of the fact that the trial court did not err in denying the change.''

All those facts and conditions exist here. Although the trial court, in its order denying the change of venue, seemed to place it chiefly upon the untimeliness of the motion, nevertheless, the motion was before it upon the grounds of local hostility and prejudice. It must be presumed that in denying the motion, it exercised its discretion and impliedly held that there was no local hostility and prejudice such as would prevent a fair and impartial trial. For other discussions upon this question, see *State v. Smith*, 115 Wash. 405, 197 Pac. 770; *State v. Allen*, 128 Wash. 217, 222 Pac. 502; *State v. Whitfield*, 129 Wash. 134, 224 Pac. 559; *State v. Whidden*, 144 Wash. 511, 258 Pac. 318; *State v. Adams*, 144 Wash. 363, 258 Pac. 23.

Much and forceful argument is devoted by appellant to the alleged errors of the trial court in refusing to appoint a commission to examine into the mental condition of appellant both prior to the trial and after the verdict had been rendered, and that by reason thereof the verdict was contrary to law and that the court erred in denying appellant's motion for a new trial.

Appellant was charged with the murder of Juanita Kirk on September 17, 1928. On October 13, 1928, appellant, through his then attorney, pleaded to the information that, at the time of the alleged commission of the crime charged therein and for a long time prior thereto, he was mentally irresponsible and criminally insane, and that the mental irresponsibility and crim-

inal insanity still exist. This motion was supported by the affidavit of the then attorney of appellant. The plea was signed by the attorney and also by appellant. Just prior to the trial on December 13, 1928, appellant, through his then attorney, moved the court to appoint a commission to examine into the mental condition of appellant. This motion was also based upon an affidavit by the attorney to the effect that he believed that appellant was mentally irresponsible at the time of the alleged commission of the crime of which he is charged, and that appellant had been defective from birth and had been an inmate of the state custodial school at Medical Lake; that he is still mentally irresponsible and cannot be tried.

On December 17, the day the trial began, the trial court denied the application for the appointment of an insanity commission to pass upon the then present mental condition of the appellant after having heard arguments thereon and being advised in the premises.

In the trial of the case, the trial court submitted the following interrogatories to the jury for their special verdicts thereon, which were answered by the jury as shown herein:

(1) Did the defendant Arthur Schafer commit the crime charged against him in the information? A. Yes. (2) Did the jury acquit said Arthur Schafer because of his insanity or mental irresponsibility at the time of said commission of said offense? A. No. (3) Does the insanity or mental irresponsibility of said defendant Arthur Schafer continue and does it exist at the time of the trial? A. No. (4) If such condition of insanity or mental irresponsibility does not exist at the time of the trial, is there such a likelihood of a relapse or irresponsible condition that the defendant is not a safe person to be at large? A. Yes.

The general verdict was that the defendant was

guilty as charged. The jury also recommended that the death penalty be inflicted. The general and special verdicts were filed December 21, 1928. Thereafter appellant moved for a new trial upon the statutory grounds and upon the further ground that appellant was mentally irresponsible at the time of the trial. This motion was regularly heard by the trial court and denied on February 2, 1929.

On January 31, 1929, just prior to the decision on the motion for a new trial, appellant, through his then attorney, made another motion for the appointment of a commission to examine the mental condition of appellant before sentence, on the ground that he was mentally irresponsible and criminally insane at that time and would continue to be so indefinitely. This motion was based upon the records and files in the case and the subjoined affidavit of his then attorney. It was also supported by the affidavit of a regularly practicing physician and surgeon who had had experience for twenty years in many insanity cases and had examined appellant. It was his opinion that appellant was insane at the time of making his affidavit, January 29, 1929; that he had been a feeble-minded person since childhood and that his mental condition was one that gradually gets worse instead of better and, sooner or later, develops into insanity; that appellant was then mentally irresponsible and incapable of distinguishing between right and wrong, which condition would continue indefinitely.

An affidavit by the superintendent of the state custodial school at Medical Lake, Washington, also supported the application, which was to the effect that appellant had been an inmate of that school from February 22, 1920, to September 18, 1925, at which time he made his escape from the school. The affidavit also gave the psychopathic condition of appellant as that of

a low-grade moron; that his chronological age was twenty-four years, while his mental age was nine years; that he was quarrelsome, destructive and could not be trusted in any way. There was also an affidavit supporting the motion by the county superintendent of schools for Grays Harbor county, Washington, stating that she had had correspondence with the superintendent of the custodial school above named, giving the psychopathic condition of appellant as stated in the affidavit of the superintendent, and also that appellant was dangerous, destructive and should not be at large, and that the custodial school would send an attendant to take him back to the institution. She also stated that, as superintendent of schools, she had received several complaints about his queer actions around the schoolhouse where he resided.

The last motion for an insanity commission was also denied by the trial court, who thereupon proceeded to sentence appellant upon the verdict of the jury.

The statutes respecting a plea of insanity or mental irresponsibility on behalf of one charged with crime were enacted by the legislature of 1907, Laws of 1907, p. 33, Rem. Comp. Stat., §§ 2173 to 2176. These statutes are somewhat lengthy and the material portions of them are set forth at length in *State v. Schrader,* 135 Wash. 650 (l. c. 653, 654), and in the *En Banc* decision, same case, l. c. 661. The Department decision in that case was one reversing the trial court with instructions to try out the question of the insanity of appellant at the time of his former trial, and, if found that he was then sane, to put the sentence then made into effect; that, if it be found that he was then insane, the trial court should set aside the verdict on its previous judgment and grant the motion for a new trial.

On rehearing that decision was overruled and the

judgment of the trial court affirmed. In the two opinions in that case, the statutes were analyzed and our previous decisions reviewed and discussed. In that case the accused had pleaded that he was insane or mentally irresponsible at the time of the commission of the homicide, and was sane at the time of the trial. We there held that, having pleaded his sanity at the time of the trial and taken the verdict of the jury on his guilt, he thereby waived the right to subsequently have the question of his sanity inquired into at that time.

The case of *State v. Wilson,* 69 Wash. 235, 124 Pac. 1125, was quoted at some length in the *En Banc* decision, which decision adverted to § 2174, *supra,* which provides that the question of insanity at the time of the trial may be determined by the jury under a special plea, and succeeding sections point the proper procedure in the ·event that the jury finds mental irresponsibility at such time.

In the present case the plea of insanity or mental irresponsibility had been made and an application for a commission to try that question before trial. It was also made after trial. Hence, there was no waiver of the right to demand a commission both before the trial and after the trial and the *En Banc* decision in the *Schrader* case did not pass upon such a condition of affairs. It was there said that:

"Had defendant, either before or during the trial, through his counsel or other person authorized to act for him, requested that the court appoint a commission to inquire into his then insanity, and the court had refused, a different question would be presented."

The exact question is, therefore, now *res integra.*

Counsel relies upon the elementary principles that an accused cannot be convicted if insane at the time of the commission of the alleged offense; that he can-

not be tried if insane at the time of the trial; that, in the event of conviction, sentence cannot legally be imposed or executed if he has then become insane.

Here again some presumption must be indulged in favor of the trial judge who had appellant before him and was able to observe his conduct and demeanor; and some indulgence must be given the general and special verdicts of the jury, doubtless rendered upon conflicting, but competent, evidence. While it seems to be fairly well established by the affidavits in the record that appellant was subnormal and was of the mental age of nine years, his ability to distinguish between right and wrong is the test of sanity or insanity in criminal law.

Insanity in law is

"Such a mental condition, as, either from the existence of delusions, or from incapacity to distinguish between right and wrong, with regard to the matter under action, does away with individual responsibility." Webster's Dictionary.

"Irresponsibility" is defined by Webster as "Want of, or freedom from, responsibility, or accountability."

Insanity in law covers nothing more than the relation of the person and the particular act which is the subject of judicial investigation. The legal problem must resolve itself into the inquiry whether there was mental capacity, or moral freedom, to do or abstain from doing the particular act. 2 Bouvier's Law Dictionary, Rawle's 3rd Rev., 1590.

The term "mental irresponsibility," as used in the statute alternatively with plain insanity, of course means something less than total or permanent insanity. Nevertheless, it implies nothing but what is defined in law as criminal insanity: That is, whether there was mental capacity and moral freedom to do or abstain from doing the particular act. It cannot be

said, as a matter of law, that a boy of nine years, or a person with the mentality of a boy of nine years, is incapable of mental capacity and moral freedom to do or abstain from doing such a criminal act as the commission of homicide.

Whether appellant testified in his own behalf or not, is not disclosed by the record. At all events he was personally present and visible to both the court and jury. His trial consumed nearly five days, presided over by an able and experienced trial judge. Evidence was undoubtedly introduced, pro and con, although we have no means of examining it, upon the only question at issue in appellant's defense: that of his mental irresponsibility, or insanity, at the time of the commission of the crime and at the time of the trial.

A person is presumed to be sane until the contrary is shown, which, under our statute, must be by a preponderance of proof. We must presume that there was no preponderance of proof of insanity, or mental irresponsibility, presented to the court and jury. Under our law, a jury would be demandable in an ordinary insanity inquisition. (Rem. Comp. Stat., § 6930.) He has had a jury pass upon his sanity or insanity.

Since we are unable to go outside of the record and can only be governed by the presumptions arising from the verdicts of the jury and the rulings of the trial court, we cannot say that there was any abuse of discretion by the trial court in denying the motions for the appointment of a commission to determine the sanity or insanity of appellant.

Appellant also argues that, since the jury answered the fourth interrogatory, propounded for them to answer, ''yes,'' that was a finding that insanity, or mental irresponsibility, existed at the time of the

commission of the alleged offense, but did not exist at the time of the trial.

It must be granted that the answer to the fourth interrogatory is somewhat incongruous with the answers to the other interrogatories. We take it, however, that what the jury thought they were answering was that there was such a condition that appellant was not a safe person to be at large. That interrogatory was a proper one to be submitted by the court to the jury under Rem. Comp. Stat., § 2175, relating to special verdicts in the event that the jury found that the accused committed the crime charged, but was acquitted because of insanity, or mental irresponsibility, at the time of its commission, and that the insanity or mental irresponsibility still exists or, if not, that he is liable to a relapse or recurrence of the insane or mentally irresponsible condition so as to be an unsafe person to be at large. That provision was made in order that the court might enter judgment in accordance therewith committing such criminally insane person until such time as he should thereafter be discharged.

Under the three other special findings and the general verdict, there was no necessity for this fourth interrogatory to be answered at all. While it is somewhat inconsistent with the others, it cannot be said to be so repugnant to the general verdict and the other findings as to be in any way controlling upon them.

Let it be stated now that the trial court still has the discretion vested in it of granting an insanity commission to pass upon the mental condition of appellant before final sentence under our statute and decisions. It is not to be presumed that the trial court will consider lightly such a petition properly presented at any time before sentence is finally pronounced.

In conclusion, let it be said that the final determination of a mortal case such as this is one of the most

perturbing things ever devolving upon a court of last resort. Every question presented by appellant has been attentively and conscientiously considered in the light of the record as made and our statutes and decisions. We have also read and carefully considered the case earnestly pressed upon our attention by present counsel for appellant; *State v. Jones,* 12 Mo. App. 93. There were no such egregious blunders and stupid misconceptions of elementary principles of law in the defense of this case as in that.

Finding no error justifying reversal on the record produced here, we are obliged to affirm the verdict and judgment. It is so ordered.

All concur.

