[No. 503.   Decided May 25, 1892.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES
BROOKS, *Appellant.*

CONTINUANCE—INSANITY—TESTIMONY OF NON-EXPERT—REMARKS
OF JUDGE.

The refusal of the trial court to grant defendant a continuance
for the purpose of obtaining the attendance of a resident of another
county as a witness, will not be deemed error where there is no
showing of diligence on the part of the defendant to have the wit-
ness in attendance, particularly when the application fails to show
that the testimony of such witness was not cumulative, or that the
same matter could not be proved by some other witness present at
the trial.

The testimony of a non-expert witness as to his opinion of de-
fendant's sanity, is inadmissible, unless he has first testified as to
acts and conduct within his own knowledge which led him to form
an opinion in the matter.

The remark of the court to the jury, preliminary to instructing them, that "you will be left to determine between the demands of public justice and the defense of the prisoner at the bar," is not erroneous on the ground that the jury would be thereby led to infer that public justice demanded the conviction of the defendant.

*Appeal from Superior Court, Spokane County.*

The facts are stated in the opinion.

*Ross C. Hall,* and *R. E. M. Strickland,* for appellant.

*S. G. Allen,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

SCOTT, J.—The appellant was convicted of murder in the first degree, and he took an appeal to this court, alleging three grounds of error: *First,* That the court erred in refusing him a continuance; *second,* that the court erred in rejecting the testimony of a certain non-expert witness whereby it was sought to prove that appellant was insane; *third,* that the judge committed error in saying to the jury, "you will be left to determine between the demands of public justice and the defense of the prisoner at the bar."

It appears by the record that on the 26th day of September, 1891, by consent of both parties, the cause was set for trial for October 12th following. When the cause was called for trial, a continuance was asked for the purpose of obtaining the attendance of one Paul Carrington as a witness for the defense, who was a resident of the county of Stevens, in this state. A supœna was issued for him on behalf of the defendant on the 5th day of October, but the only step taken toward obtaining a service thereof was to deliver it to the sheriff of Spokane county, with a request that he send it to the sheriff of Stevens county for service. It does not appear that said sheriff either refused or consented to do so, or that the defendant paid any further attention to the matter until the time set for trial,

when he moved for a continuance on the ground that the witness had not been subpœnaed. It seems to us that there is an entire failure to show any diligence in the premises. No excuse was shown for the several days' delay in having the subpœna issued, and it is apparent that at the time the cause was set for trial the defendant knew as well then as he did at any time afterwards what this witness would testify to; nor is there any showing made as to why service of the subpœna was not obtained, nor why the defendant had not more diligently looked after the same. It was no part of the duties of the sheriff of Spokane county to look after the service of this subpœna, and the defendant should have taken some steps to know whether his request was being carrid out. His application for a continuance was defective in other particulars. There was no showing that the matters which he desired to prove by this witness could not be proven by some other witness present at the trial, or that the testimony was not cumulative. Under the circumstances, and the indifference which appears to have been manifested by the defendant as to obtaining the testimony or attendance of the witness Carrington, we cannot think that he attached any great importance thereto. There was an entire failure in the particulars mentioned to comply with the requisites of the statute relating to continuances, and we have only considered the matter in consequence of the gravity of the offense of which he was convicted.

As to the second ground alleged: On the trial, one Charles Scutcheon, a non-expert witness, was asked his opinion of the defendant's sanity. An objection by the state to his testifying thereto was sustained by the court on the ground that no foundation had been laid for this testimony sufficient to warrant its introduction. The defendant was on trial for the murder of his wife. Some time prior to the commission of the offense he had become sep-

arated from her. Preceding the foregoing question, said witness testified that he had known the defendant for six or seven years; that they "enjoyed the most friendly relations;" that he, the witness, saw defendant two or three times a week after his separation from his wife, extending over a period of several months, and at these times conversed with him; that the chief topic of his conversation was in regard to his separation from his wife; that he seemed to be grieving about it. The witness was here asked the following question: "What did he say about it?" To this the state objected; whereupon counsel for defendant stated he wanted to show that in all his conversations with his friends this separation was the uppermost topic on the defendant's mind, and that he was continually talking about it. The court sustained the objection to this question, to which ruling the defendant excepted, and he urges the same as error in connection with the ground aforesaid. The witness had already testified, however, that the matter of this separation was the principal topic of the defendant's conversation with him. It was entirely unnecessary to prove what the witness said for the purpose stated. The witness had testified to the fact, and, while the state upon cross examination might have gone into the details to test the truthfulness of the statement if deemed material, the defendant had no right to detail all these various conversations merely to show that the defendant customarily talked about this separation from his wife, and it would have been necessary to have gone into the same fully to cover the point indicated. In answer to a question as to whether the defendant stated the cause of said separation, the witness said: "Well, he didn't exactly state the cause, but he often spoken threateningly of some man and woman by the name of Brauge." Then the witness was asked:

"From your conversations with Mr. Brooks, and from yur observation of his conduct, what was your opinion as to his sanity?"

The state objected to the question on the ground of incompetency, and the court sustained the objection. There was no error here. The witness had so far testified to nothing upon which the opinion of a non-expert as to the sanity or insanity of the defendant could be based, nor had he been asked any questions for this purpose, either as to the defendant's conduct or conversations. It is true he was in the habit of talking of his and his wife's estrangement, and he had spoken threateningly of the parties mentioned in connection therewith, but there was nothing remarkable in this. It does not appear, nor was there any attempt to show that there was anything peculiar about it otherwise. Following this, the court informed the defendant's attorney that he would allow the witness to state whether there was anything unusal in the conduct or sayings of the defendant that arrested the attention of the witness, and upon being questioned, the witness said that he saw nothing unusual in the conduct of the defendant. In answer to a question as to what the defendant said which was unusual, the witness answered: "Well, he was terribly excited over the strain;" he blamed Brauge and his wife for separating them. No other particulars were shown or offered, nor after these matters were testified to was the witness again asked as to his opinion of the sanity of the defendant, and the matter was apparently dropped at this point. If the question had been renewed, it is doubtful at least whether enough appeared from the testimony of the witness to justify an opinion from him of the defendant's sanity, but it is not necessary to decide this, as the point was not raised upon the testimony aforesaid subsequently given, and clearly there was no error in not allowing the witness to answer the question upon the testimony he had given at the time it was asked. While, according to the weight of authority, the opinion of a non-expert witness as to the sanity of the defendant

may be given, yet such an opinion can only be given after the witness has testified to acts and sayings of the defendant, and as to his conduct which led him to think that the prisoner was insane. These matters must be within the knowledge of the witness, as he could not give his opinion upon facts which were not within his own observation; in other words, he must state the facts and the reasons within his own knowledge which led him to form his opinion as to the sanity of the defendant. See 2 Bish. Crim. Proc. (3d ed.), § 678, and authorities cited.

Preliminary to his instructions to the jury, in alluding to the conclusion of the trial, the judge used the language attributed to him upon which the last ground of error is founded. The appellant undertakes to make the point that thereby the impression was conveyed to the jury that "public justice" demanded the conviction of the defendant, but this would be giving it a strained technical meaning, it seems to us, and one not likely to have influenced the jury. There is no other legal principle probably so thoroughly imbedded in the minds of the people of this country, and so well and commonly understood as the one that any person charged with a crime is presumed to be innocent until proven guilty; nor could any American citizen be made to understand that public justice could demand the conviction of an innocent person under any circumstances; and we do not think that the remark of the trial judge can be construed as having operated upon the minds of the jury, to the prejudice of the defendant, or that it was calculated to influence them in their findings. Perhaps the words would have been better left unsaid, but there was no foundation for error unless the defendant could have been prejudiced by the remark. It could hardly be interpreted as meaning that public justice demanded the conviction of the prisoner, for public justice would demand his acquittal, in case of his innocence, certainly just as strongly as it would demand

a conviction if guilty. It could not be understood to mean that public justice demanded the conviction of an innocent person, nor do we think it open to the charge that the judge intended to or did thereby express any opinion as to the guilt or innocence of the prisoner, or that the public regarded him as guilty.

After a careful consideration of the different grounds of error, alleged by the defendant, we are satisfied from the record that the defendant had a fair and impartial trial; that there was no error upon the part of the court; consequently the judgment and sentence is affirmed, and the cause is remanded, with instructions to the lower court, to appoint a day for the carrying of its sentence into effect according to law.

ANDERS, C. J., and HOYT, DUNBAR and STILES, JJ., concur.