[No. 22152.   Department Two.   April 23, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. R. L. (LEE) WILKINS, *Appellant.*[1]

*Herbert C. Bryson* and *Francis A. Garrecht,* for appellant.

*W. G. Coleman,* for respondent.

[1]Reported in 287 Pac. 23.

FRENCH, J.—On the evening of December 9, 1928, John W. Brooks of Walla Walla was shot and instantly killed, the circumstances being about as follows: Mr. Brooks was, on that evening, sitting in his home when someone knocked on the door. Mr. Brooks called to him to come in, and a masked man entered, and, after a slight altercation, Mr. Brooks was shot twice. The assailant turned and walked out, entered a waiting automobile and drove away. Early in February, the defendant and his sixteen-year-old son were placed under arrest, held for examination, and a short time thereafter an information was filed charging the defendant with first degree murder. The defendant interposed the defense commonly known as insanity, and, having been found guilty at the trial, this appeal follows.

The first error complained of is that the court compelled Alfred Wilkins, the son of defendant, "to abandon his objection to testifying on the ground that he might incriminate himself." Alfred Wilkins, the son of the defendant, was a boy sixteen years old. He had accompanied his father on the occasion of the shooting, and had remained in the automobile.

The defendant Wilkins and his wife were not living together at the time the shooting took place, and had not been living together for some time prior thereto. It seems that the defendant, to some extent at least, blamed Mr. Brooks for his marital difficulties, and, after having shot Mr. Brooks, stated to his son that he had killed the man who had broken up their home. The theory of the defense is that the defendant had worried so much over his marital difficulties that he had become mentally irresponsible.

Alfred Wilkins, the son, being called as a witness on behalf of the state, was interrogated and, after a few preliminary questions, the young man answered, "I

do not care to testify for fear of incriminating myself, and I do not want to testify against my father. Q. Which one of those reasons?" After some argument, the court stated: "The objection is sustained."

Thereafter certain further questions were asked and answered without objection, when the attorney for the defense interposed this objection to the question asked: "I think this properly comes under the boy's objection." The court then ruled, "I sustained the objection, but having answered these questions he will be required to answer all questions. He cannot answer some questions and refuse to answer others." Thereafter the examination proceeded without any claim of privilege being made by the young man, and without any objection by counsel on that ground.

If it be conceded that the claim of privilege was properly made by the witness, which we think, under the record, is very doubtful, and if it be conceded that the ruling of the trial court in compelling him to testify was error, which we also think was very questionable, yet such error, if any, cannot be taken advantage of by the defendant; as the claim of privilege is a personal one to the witness and the defendant can not insist upon it. One of the leading cases on this matter is *Samuel v. People,* 164 Ill. 379, 45 N. E. 728, where the court stated:

"It is not contended that the evidence given by the witness King was not competent evidence under the issues involved, but it is claimed that the defendant below is entitled to complain because King was compelled to testify, although claiming his privilege. This is a matter of which the witness alone can complain, and of which the plaintiff in error can take no advantage, as being error committed against himself. The privilege is that of the witness, and not of the party; and counsel will not be allowed to make the objection. The privilege cannot be interposed by either party to

the action, nor can either party raise the objection on behalf of the witness. It must be claimed by the witness in order to be available, and it lies with him to claim it or not, as he may choose. As the privilege is personal to the witness, he may waive it, and elect to testify. *Mackin v. People,* 115 Ill. 312, 3 N. E. 222; *Moline Wagon Co. v. Preston,* 35 Ill. App. 358; *State v. Foster,* 23 N. H. 348; 1 Greenl. Ev. § 451; Whart. Cr. Ev. (9th Ed.) § 465; 29 Am. & Eng. Enc. Law, p. 843. This being so the evidence is equally good where the witness, instead of giving it voluntarily, is compelled to give it. In *Reg. v. Kinglake,* 11 Cox. Cr. Cas. 499, where a witness called on behalf of the crown refused to give evidence, on the ground that it would tend to criminate himself, but, the objection being overruled by the judge, gave his evidence, it was held that the defendant could not object that such evidence was improperly received; that the privilege of refusing to answer questions on the ground that they tend to criminate is that of the witness alone; and that neither party to the suit can take advantage therefrom. Cockburn, C. J. said: 'By refusing to be examined, the witness may have exposed himself to imprisonment for contempt, or to a fine. But that merely concerns the witness himself. If he chooses to give his evidence voluntarily, it would be perfectly good evidence, and it would not be illegal evidence in any sense whatever, and there could be no cause of complaint. If so, what difference does it make that he has given his evidence in consequence of some coercion which has been put upon him? I can see no reason for saying that when the witness is compelled to answer, although he might have objected, that is a ground of objection on the part of either of the litigants.' Blackburn, J., said: 'The privilege is that of the witness, and, if he waives it, it is his own affair. But, if instead of giving his evidence voluntarily, he gives it under compulsion, what is the difference? The party in suit is not injured.' Mellor, J., said: 'It is clear that, if Mr. Lovibond (the witness) had made no objection, his evidence would have been receivable, and it really can make no difference that he objected, and was compelled to give his evidence.' So, also, in *Cloyes v. Thayer,* 3 Hill, 564, it

was said by Nelson, C. J.: 'The court erred, also, in compelling the payer of the note to answer questions tending to criminate himself. . . . But the error is not available to the plaintiff. The privilege belongs exclusively to the witness, who may take advantage of it or not, at his pleasure. . . . If ordered to testify in a case where he is privileged, it is a matter exclusively between the court and the witness. The latter may stand out, and be committed for contempt, or he may submit; but the party has no right to interfere or complain of the error.' So, also, in *Morgan v. Halberstadt,* 9 C. C. A., 147, 60 Fed. 592, it was said: 'Such privilege belongs exclusively to the witness. The party to the suit has no right to insist upon it, except when he is himself the witness. And if the witness waives his privilege, or the court disregards it, and requires him to answer, the party has no right to interfere or complain of the error.' "

The next claim of error relates to the refusal of the court to admit in evidence the record of a certain case tried in Oregon some years prior thereto. It seems that the defendant, some ten years ago, had been injured, had sued for the injury, and recovered judgment therefor. The defendant offered in evidence the duly certified original supreme court records of the state of Oregon in the case of *Wilkins v. North Coast Power Company.* No authority is cited suggesting that the record in the Oregon court in a civil case is admissible under the circumstances that here exist, and we can see no good purpose to be served by its admission. The ruling of the trial court was, therefore, correct.

The next claim of error is the exclusion of certain pictures and photographs produced by the sheriff. It had been claimed by the defendant that his wife had, on a few occasions in company with other people, gone to the home of Mr. Brooks and, while there, had engaged in drinking and dancing and also had been

shown certain lewd pictures. After the death of Mr. Brooks, the sheriff had taken from his former residence certain nude pictures concerning which some of the witnesses had testified. No theory is suggested by appellant as to why these pictures were or should be admissible, or what probative force they could have had in this trial. We think the trial court ruled correctly.

The next error claimed is that the court wrongfully excluded nonexpert opinion evidence on the question of the sanity or mental responsibility of the defendant. A voluminous mass of cases have been cited to show that such testimony is admissible; but the rule is well settled by our own decisions that nonexpert witnesses may testify. *State v. Brooks,* 4 Wash. 328, 30 Pac. 147; *State v. Craig,* 52 Wash. 66, 100 Pac. 167; *Rust v. Washington Tool & Hardware Co.,* 101 Wash. 552, 172 Pac. 846, are a few of the numerous cases from this court which have touched upon this question. The rule is, however, that nonexpert witnesses or lay witnesses, in order to qualify to testify on the question of the insanity or mental irresponsibility of the defendant, must show not only that they had adequate opportunity for observing such person, but must also testify in a general way, at least, as to the peculiar facts and circumstances on which they base their conclusions. Our leading case on that subject is *State v. Brooks,* 4 Wash. 328, 30 Pac. 147, where this court said:

"The state objected to the question on the ground of incompetency, and the court sustained the objection. There was no error here. The witness had so far testified to nothing upon which the opinion of a nonexpert as to the sanity or insanity of the defendant could be based, nor had he been asked any question for this purpose, either as to the defendant's conduct or conversations. It is true he was in the habit of talking of his

and his wife's estrangement, and he had spoken threateningly of the parties mentioned in connection therewith, but there is nothing remarkable in this. It does not appear, nor was there any attempt to show that there was anything peculiar about it otherwise. Following this the court informed the defendant's attorney that he would allow the witness to state whether there was anything unusual in the conduct or sayings of the defendant that arrested the attention of the witness, and upon being questioned the witness said that he saw nothing unusual in the conduct of the defendant. In answer to a question as to what the defendant said which was unusual the witness answered, 'Well, he was terribly excited over the strain;' he blamed Brauge and his wife for separating them. No other particulars were shown or offered, nor after these matters were testified to was the witness again asked as to his opinion of the sanity of the defendant, and the matter was apparently dropped at this point. If the question had been renewed, it is doubtful at least whether enough appeared from the testimony of the witness to justify an opinion from him of the defendant's sanity, but it is not necessary to decide this, as the point was not raised upon the testimony aforesaid subsequently given, and clearly there was no error in not allowing the witness to answer the question upon the testimony he had given at the time it was asked. While, according to the weight of authority, the opinion of a nonexpert witness as to the sanity of the defendant may be given, yet such an opinion can only be given after the witness has testified to acts and sayings of the defendant, and as to his conduct which led him to think that the prisoner was insane. These matters must be within the knowledge of the witness, as he could not give his opinion upon facts which were not within his own observations; in other words, he must state the facts and the reasons within his own knowledge which led him to form his opinion as to the sanity of the defendant.''

The general rule also is:

''The determination of the question whether a particular nonexpert witness is sufficiently qualified to ex-

press an opinion on the mental condition of another is necessarily to a great extent within the sound discretion of the trial court." 16 C. J., p. 752, § 1540.

In the instant case two nonexpert witnesses were interrogated at considerable length in an attempt to qualify them to testify "as to his mental responsibility, as to whether he is insane or not." The trial court ruled that:

"  .  .  . the opinion testimony that is not based on facts sufficient to warrant the opinion has no force, and I will sustain the objection because the facts are not sufficient to warrant the witness in answering the question."

Without detailing the testimony of these two witnesses, it is sufficient to state that neither witness detailed any unusual facts or circumstances which would warrant any person in reaching the conclusion that the defendant was insane or mentally irresponsible. On the authority of *State v. Brooks, supra,* the ruling of the court was right.

The next assignment of error goes to the admission of testimony "as to the truth or falsity of the information conveyed to the defendant as to the character and nature of the parties at the home of the deceased."

It seems to us, however, that the appellant has misconceived the nature, extent, and purpose of this testimony of which he now complains. The defendant testified that certain specific people had made definite statements to him touching the question of his wife's relationship to the various parties which he thought had taken place in the Brooks home. The testimony of which defendant now complains is that these witnesses were called to the witness stand in rebuttal and testified that they had not made the statements as to the defendant which he in his examination stated had

been made. There was no error in the admission of such testimony.

Complaint is also made by the defendant that the court erred in permitting "the evidence of other unrelated criminal offenses, especially that testified to by Grace Fredericks." The defendant, when on the witness stand in his own behalf, testified concerning a certain automobile trip which he had made to Bend, Oregon, and was questioned fully as to the nature and extent of this trip and as to its purpose, or rather as to certain information which had been conveyed to him while he was on this trip by certain people who had accompanied him. The witness, Grace Fredericks, was called by the state in rebuttal and testified as to the real nature and purpose of the trip to Bend, Oregon, stating that she had accompanied the defendant on this trip. The testimony went in without objection, and we can not say that there was any error in its admission.

The other assignments of error relate generally to the instructions given and refused, and to certain argument which the prosecuting attorney is alleged to have made to the jury, although this alleged improper argument no place appears in the record, and therefore cannot be considered. We have carefully checked the instructions given by the trial court and find them eminently fair and that, while error has been assigned based on instructions given and refused, these matters have not been argued. We think the record in this case is free from error.

The judgment is therefore affirmed.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.