[No. 24774. Department One. May 2, 1934.]

THE STATE OF WASHINGTON, *Respondent*, v. BYRON MILLER, *Appellant*.[1]

[1]Reported in 32 P. (2d) 535.

444

*Charles F. Bolin* and *E. L. Bennett,* for appellant.
*O. Sandvig* and *M. C. Delle,* for respondent.

BEALS, C. J.—During the month of May, 1931, the defendant, Byron Miller, then thirty-nine years of age, was living with his wife and family, which included his sister-in-law Gladys Miller, on the outskirts of the town of Mabton. Miller had lived in and around this town the greater portion of his life, having worked as farm hand and sheep herder for different residents of the community.

At this time, George Warring was marshal of Mabton, and also held a commission as a deputy sheriff of Yakima county. Several times, Mr. Warring had sent Miller home when the latter was under the influence of liquor, and more than once, Mrs. Miller had telephoned Mr. Warring to come to the Miller home and quiet her husband, who was often drunk and abusive. Once, Mr. Warring had locked Miller up, but on all occasions it would seem that Mr. Warring had been very generous and considerate in his treatment of Miller, and had endeavored only to help him without proceeding to extremities.

For several days prior to May 26, 1931, Miller was unemployed, and remained about his home drinking

considerable liquor. Early in the morning of this day, Miller became angry at his wife, who left the house, stating that she was going to telephone for help. Mr. Warring responded to this call, and, upon his approach to the Miller house and before he had even spoken to defendant, was by defendant shot down in cold blood and mortally wounded, death ensuing the following day.

May 27, 1931, defendant was, by information, charged with the crime of murder in the first degree, and was on the same day arrested and brought before the court. The next day, defendant, by his attorney who had been appointed by the court to represent him, pleaded not guilty by reason of insanity at the time of the commission of the crime charged, also stating in his plea that the insanity still existed. On the same day, defendant's counsel moved for an order appointing a commission of three disinterested and qualified physicians to examine defendant and report as to his sanity.

It is stated that, when defendant was first arraigned, he said, in response to a question by the court as to whether or not he desired counsel, that he did not; that he was guilty and did not need an attorney; and that the court refused to accept such a plea, and appointed Mr. Charles F. Bolin to represent defendant, who later, by his counsel, entered the plea above referred to. Mr. E. L. Bennett was then associated with Mr. Bolin as counsel for defendant.

The case was set for trial for May 29, but was later continued to June 8. Defendant moved for a further continuance, which was by the court refused. June 8, the case came on regularly for trial upon the information and defendant's plea before the court and a jury, resulting in a verdict of guilty of murder in the first degree, together with a special verdict to the effect

that the death penalty should be inflicted. Pursuant to these verdicts, defendant was adjudged guilty as charged and sentenced to death; from which judgment, defendant has appealed to this court.

The course of the appeal was greatly delayed, the case not having been ready for argument here until the January term of 1934.

Appellant presents thirty-two assignments of error, which will be discussed in order.

■ In the first place, appellant contends that the trial court erred in failing to grant his motion for a commission to examine into and report upon his sanity. Appellant did not take the stand, and the killing was not denied, appellant relying only upon his plea of mental irresponsibility.

Appellant's motion for the appointment of a commission appears in the transcript as filed May 28, and as supported by an affidavit of his counsel. No reference to the application is found in the statement of facts, and the record contains nothing which indicates that the trial court failed to exercise its discretion in considering appellant's motion, or that, in denying the application, the court in any wise abused the discretion vested in it by law. It does not appear from the statement of facts that any later motion was made on behalf of appellant for the appointment of any commission to examine appellant concerning his sanity, and we are unable to hold that the trial court committed error in failing to appoint the commission asked for by appellant.

■ In the next place, it is argued that the trial court erred in denying appellant's motion for a continuance to a date later than June 8. This matter rested largely within the discretion of the trial court, and no abuse of this discretion appears.

■ Certain affidavits, which were probably filed in

support of appellant's motion for a continuance, appear in the transcript, but, not having been made part of any statement of facts and being no wise identified by any order in the record, can not be considered in connection with the question presented by this assignment of error. *Mattson v. Eureka Cedar L. & S. Co.,* 79 Wash. 266, 140 Pac. 377; *Walker v. Walker,* 151 Wash. 480, 276 Pac. 300; *Marsh v. West Fir Logging Co.,* 154 Wash. 137, 281 Pac. 340; *Keyes v. Ahrenstedt,* 156 Wash. 526, 287 Pac. 35; *Dailey v. Dailey,* 163 Wash. 104, 299 Pac. 988.

▉ Appellant next contends that his trial was illegal because the jurors before whom he was tried were impaneled to serve only up to and including June 8, and that the impaneling of the jury was not completed until June 9. The statement of facts recites that the case was called for trial June 8, 1931, and that:

"Thereupon proceedings were had and testimony taken in said cause as follows, to wit:
"A jury was impaneled and sworn.
"(Thereupon court adjourned to the following day, June 9th, at which time the following proceedings were had: . . ."

We find in a supplemental transcript filed by appellant certain extracts from the clerk's minutes which appear to be at variance with the statement of facts in regard to this matter. The statement of facts can not be contradicted by the filing of a transcript of the clerk's minutes. The statement of facts was certified as correct by the trial judge, and must be accepted as a true narration of what occurred.

▉ It appearing that the jury was impaneled on June 8, the fact that the trial lasted several days thereafter is immaterial. *Beach v. Seattle,* 85 Wash. 379, 148 Pac. 39. It nowhere appears that appellant at the time made any objection to the impaneling of the

jury, the question, as far as the record shows, being raised for the first time on the appeal to this court.

Appellant next contends that the trial court erred in refusing to direct that he be furnished with a statement of facts and a transcript of record on appeal. It appears that both these matters were provided for appellant, and we find no merit in this assignment of error.

We shall now discuss appellant's assignments of error based upon rulings of the trial court in connection with the evidence introduced or offered by the respective parties.

A. W. Warner, called as a witness for appellant, testified that he had known Miller for about twenty years, and had also known his parents, both of whom had been confined in asylums for the insane. Appellant had worked for the witness on and around hay-balers, and in response to a question as to how appellant would act while engaged in this occupation, the witness replied:

"Once in a while he would go around the stack when he was supposed to be cleaning up, and stand leaning on the fork with his head down, and not say a word."

The witness later stated that appellant would be "just thinking about something the way it looked." It appeared from the testimony of the witness that his observation of appellant's conduct had not been close, the witness having testified that he had not been in appellant's company very much, even when appellant was working for him.

To a question by appellant's counsel as to whether or not the witness would say appellant was sound of mind, the state objected. The objection having been sustained by the trial court for the reason that the witness had not testified to facts which would reason-

ably support any opinion on the part of the witness as to appellant's mental condition, appellant then offered to prove that the witness would testify, from his long association with appellant, that appellant was insane. Counsel for the prosecution, in reply to this offer, stated that he had no objection, provided that the witness related facts upon which he based his conclusion. Appellant's counsel made no offer to prove any further facts, and it clearly appeared from the cross-examination of the witness that, in the latter's opinion, appellant was insane.

It is a rule in this state that the testimony of non-expert witnesses is competent to show insanity. *State v. Brooks,* 4 Wash. 328, 30 Pac. 147; *State v. Craig,* 52 Wash. 66, 100 Pac. 167; *Rust v. Washington Tool & Hardware Co.,* 101 Wash. 552, 172 Pac. 846; *Halbach v. Luckenbach Steamship Co.,* 152 Wash. 492, 278 Pac. 178; *State v. Wilkins,* 156 Wash. 456, 287 Pac. 23; *State v. Schneider,* 158 Wash. 504, 291 Pac. 1093, 72 A. L. R. 571.

In the case of *State v. Wilkins, supra,* the rule was laid down that non-expert witnesses, in order to qualify themselves to testify as to the insanity or mental irresponsibility of a party to an action, must show not only a sufficient acquaintance with the person to enable them to form an opinion, but must also testify at least in a general way as to the peculiar facts and circumstances on which their conclusion is based. In the case cited, it was held that the witnesses had not testified to any unusual facts or circumstances which would warrant any person in reaching the conclusion that the defendant was insane or mentally irresponsible.

In the case at bar, it is clear that the witness Warner testified to no facts which would justify anyone in forming an opinion that appellant was insane or mentally irresponsible. The mere fact that appellant

occasionally stood leaning on his pitchfork with his head down, apparently thinking, affords no ground for believing that he was in any respect mentally abnormal. The witness stated both on direct and cross examination that he had not paid particular attention to appellant's conduct, and it does not appear that his association with appellant ever even approximated intimacy. The prosecution stated that it had no objection to the witness testifying to facts in connection with his observation of appellant, and we are clearly of the opinion that the trial court properly applied the rule laid down in the cases above cited.

█ It appeared from the evidence that appellant's father and mother had both been inmates of institutions for the insane, and that a brother had also been under restraint as a mental case. Dr. J. L. McDonald, called by the state as a witness on rebuttal, his qualifications being admitted by appellant, testified that appellant's father was afflicted with senile dementia, and that his mother was a victim of senile melancholia. Over appellant's objection, the witness was allowed to answer a question concerning hereditary insanity. Appellant's counsel objected only to the form of the question, stating that, as to any direct questions concerning hereditary insanity, there was no objection. Other questions were propounded to the witness concerning different degrees or stages of mental incapacity, which the witness was allowed to answer over appellant's objection.

The matter of mental capacity or incapacity in connection with criminal trials presents, of course, many complicated phases. In expert testimony on such matters, it is not possible to limit either the questions or the answers as some other evidentiary matters may be limited.

Appellant bases almost a dozen assignments of error

upon rulings of the trial court in connection with Dr. McDonald's testimony. He contends that a hypothetical question propounded to the witness by the prosecuting attorney contained only a portion of the facts, and that the court erred in allowing the witness to answer over appellant's objections.

Appellant also criticizes some of the explanations contained in Dr. McDonald's testimony, and that he should not have been allowed to state the reasons for certain of his opinions. We have carefully examined the testimony of this witness in the light of appellant's assignments of error, and we find therein no prejudice to appellant, nor any error available to appellant which calls for a reversal of the judgment appealed from.

■ Appellant complains because some of the medical experts who testified for the state had talked to appellant in the absence of his counsel. It appears that appellant desired his counsel to be present during such examinations, and so stated to the doctors, who, however, with one exception, engaged thereafter in some conversation with appellant. It does not appear that any order of the court in this connection was requested or made, or that appellant was forced to do anything against his will. No authority is cited in support of appellant's contention that the fact that certain doctors talked with appellant and later testified as witnesses for the prosecution, entitles him to a new trial. We find no reversible error in this connection.

■ Appellant next contends that Dr. McDonald, in testifying in chief, considered not only the hypothetical questions propounded to him by counsel for the prosecution, but also knowledge which he had acquired from personal observation of and conversations with appellant. It is doubtless the rule that such a witness can not add to a hypothetical question, and in answering the same consider facts within his own knowledge

and not in evidence, but it can not be held from the evidence herein that in the instant case this was done. Dr. McDonald's examination and cross-examination were long, often involved, and sometimes confused. We can not hold, however, that the answers of the witness to the hypothetical questions propounded to him by the prosecution were subject to the criticism which appellant urges.

█ Appellant next contends that the trial court erred in sustaining an objection to a question propounded to the witness McDonald on cross-examination. In regard to this question, it appears that the state initiated an objection, whereupon the court remarked, "I don't think it is a proper question." The witness, however, answered, "I can't answer such a thing as that, that would be foolish on my part." Whereupon, appellant's counsel continued with the cross-examination of the witness. It clearly appears that the witness was not prevented from answering the question by any act of counsel for the state or by any ruling of the court; neither was the answer moved against by the state.

We find no reversible error in connection with the testimony given by Dr. McDonald.

█ In the next place, appellant contends that a witness for the state was allowed to testify as an expert concerning appellant's mental condition when the witness was not qualified to testify as an expert. In response to a question as to her occupation, the witness answered, "Osteopathic physician." She was called to appellant's home immediately after the shooting to attend the wounded man. She stated that she had known appellant for twenty-six years, her acquaintance with him dating from their grammar school days. It is not contended that the witness was not a qualified osteopath, and upon her examination in chief the

witness was asked no question which called for any expert opinion. Her examination in chief was very brief, and was limited to her observation of appellant, no objection on appellant's behalf being interposed to any question propounded to the witness.

On cross-examination, appellant's counsel asked the witness some questions requiring special knowledge, which the witness answered. The state on re-direct examination asked some further questions along the line of appellant's cross-examination, none of which was objected to by appellant. Re-cross and re-direct examination of the witness followed, the witness, in response to one question on re-cross examination, stating that she never had made an examination of appellant for the purpose of determining his mental condition. The witness further stated that she was not an expert in insanity, and had had very little of that work in her practice. We do not find that appellant made any objection in the course of the examination of the witness, or that anything occurred of which appellant can take advantage on this appeal.

 Appellant next contends that the trial court erred in allowing the witness Katie Eckfield to answer over his objection a question as to whether or not she had ever observed anything about appellant which would indicate to the witness that appellant did not know the difference between right and wrong. To this question, appellant objected for the reason that the witness had testified that she had "not associated with him." The witness had testified that, for over ten years, she had lived on a place adjoining appellant's on the east, that she had been at appellant's home and he had been at hers, and that they had had some business dealings together. True, the witness said, "We have associated but very little," but her negative answer to the question to which appellant objected can

not be held to be prejudicial error. Appellant cross-examined the witness at length, and we are satisfied that his objection, as stated by the trial court, went rather to the weight of her testimony than to its competency.

██ Dr. H. S. McGuinness was called on rebuttal as a witness for the state. Appellant admitted the witness's qualifications, whereupon counsel for the prosecution asked the witness some technical questions, the witness stating as an expert that he believed appellant to be sane. In the course of the examination, it appeared that the witness was the jail physician, he stating that appellant, when the witness was talking to him, had complained that he was "unstrung," whereupon the witness asked him if he would care to have him (the witness) prescribe for him as "physician attending the jail." The witness stated that appellant had answered in the affirmative, and the doctor accordingly prescribed something for appellant which would enable him to sleep. On this testimony being given, appellant's counsel objected and moved that

" . . . all these answers be stricken because this is a case of physician testifying against his patient without the consent of his patient or attorney."

The court overruled appellant's motion, and this ruling is assigned as error. In answer to a further question, the witness further stated that he made no physical examination of appellant save to look at his nose and ears for evidence of a catarrhal condition, appellant complaining of symptoms which led the witness to think that some such condition might exist. Appellant cites no authority in support of his contention that the trial court erred in refusing to strike the answers of the witness to questions propounded to him by the state.

The following sections of Rem. Rev. Stat., are pertinent to the question now under discussion:

"The following persons shall not be examined as witnesses:—

. . . . . . . . .

"(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient; . . ." Rem. Rev. Stat., § 1214.

"The rules of evidence in civil actions, so far as practicable, shall be applied to criminal prosecutions." Rem. Rev. Stat., § 2152.

"Witnesses competent to testify in civil cases shall be competent in criminal prosecutions, but regular physicians or surgeons, clergymen or priests, shall be protected from testifying as to confessions, or information received from any defendant, by virtue of their profession and character; . . ." Rem. Rev. Stat., § 2147.

It is evident that Dr. McGuinness, in the first instance, visited appellant not as a physician attending a patient, but for the purpose of forming an opinion from appellant's appearance and conversation as to the latter's mental condition. In reply to a question by appellant's counsel as to whether or not appellant had stated to the witness that, upon the advice of his counsel, he did not want any examination made, the witness answered:

"He said he had been advised by his counsel not to submit to an examination. We asked him if he had any objection to talking, and he said no. There was no physical examination forced on him or attempted."

In the course of the conversation which followed, appellant complained of a nervous condition, which under the circumstances was a natural result of his situation, whether he was sane or mentally irrespons-

ible. The witness then, being jail physician, prescribed a sedative, which we assume was administered to appellant. Dr. McGuinness also examined appellant's ears and nose for evidence of any condition which might cause an ear-ringing of which appellant also complained. The witness frankly stated the facts in the course of his examination, but did not testify that the examination which he made, or the fact that appellant said he was "unstrung," had anything to do with the opinion which the witness had formed as to appellant's mental state, it being clearly evident that the two matters were entirely distinct.

This court, in the case of *Strafford v. Northern Pac. R. Co.*, 95 Wash. 450, 164 Pac. 71, an action for the recovery of damages for personal injuries, held that physicians furnished by the railroad company to care for the injured plaintiff were competent to testify as to what they had learned respecting the nature of her injuries. These doctors had rendered professional services to the plaintiff, and consequently did not testify as to any information acquired by them while attending the plaintiff in any professional capacity. In the case at bar, appellant did not object to the testimony of Dr. McGuinness concerning his examination of appellant and the prescription of the sedative. On the contrary, appellant evidently welcomed this testimony as a basis for his motion to strike. The testimony had no bearing at all upon the issue before the jury, and would, we assume, have been stricken had appellant moved against the same. Appellant does not contend that the testimony was prejudicial, and we can imagine no basis for such an argument.

In the case of *Strafford v. Northern Pac. R. Co.*, *supra*, this court said:

"A careful examination of the record, however, at the places pointed out by the appellants, does not dis-

close that the doctors were asked or permitted to testify as to any information acquired by them while attending the appellant as her physicians or surgeons. Dr. Willard was asked to describe, and did describe, the nature and extent of the examination he made while the appellant was a patient in the hospital under his care, but was expressly warned by counsel not to state what he found as the result of his examination, and heeded the admonition. After he had answered counsel's question, he was asked and stated that he had made two subsequent examinations of the appellant, not as her physician or surgeon or for the purpose of treating her, but for the purpose of enabling him to testify as to her condition. As to discoveries made at these examinations, he was permitted to testify fully. Clearly this was not error. As to these examinations, he was as competent to testify as any other physician or surgeon would be under the same circumstances; the fact that he had previously treated her did not preclude him from testifying to matters he had subsequently learned as to her condition under circumstances not precluding his right to testify. In order to render a physician incompetent, the information which he is called upon to disclose must have been acquired while he was attending the patient in a professional capacity for the purpose of treating her ailments; there is no privilege when the examination is made by the physician for the express purpose of publishing the results— . . ."

Under reason and authority, the ruling of the trial court on appellant's motion to strike the testimony of Dr. McGuinness was correct.

 Appellant contends that the court should have granted his motion for a new trial because of statements made by the prosecuting attorney in his argument to the jury, which statements it is argued were improper and prejudicial. The statement of facts contains no portion of any of the arguments which were made to the jury, and in the absence of such a record,

we can not pass upon statements which counsel contend were made in the course of the argument.

Two pages of appellant's abstract are devoted to what appellant states the prosecuting attorney said to the jury. An abstract of the record is not an official source to which the court can refer as a record of occurrences during the trial. It purports only to be an "abstract" of some basic record which, under the law, this court may consider in determining causes presented to it. Statements in the abstract not based upon a statement of facts or bill of exceptions certified by the court or upon the clerk's transcript are of no effect whatsoever, and must be disregarded.

It may be said, however, in passing, that counsel's argument upon this assignment of error appears to be effectually answered by the decisions of this court in the cases of *State v. Stratton,* 170 Wash. 666, 17 P. (2d) 621, and *State v. Bradley,* 175 Wash. 481, 27 P. (2d) 737.

■ Appellant contends that the trial court erred in refusing to grant his motion for a new trial and in arrest of judgment. Under this head, appellant's counsel reiterate the difficulties under which they labored in preparing appellant's case for submission to the jury, in conducting the trial, and other matters, most of which have been already discussed.

It is, of course, true that the presentation of the defense of insanity in a trial for murder is a matter of considerable difficulty, and calls for legal skill and knowledge of a high degree. It is also true that, if the defendant in such a case has at his disposal unlimited means and a long time within which to prepare his defense, the result will probably be somewhat more to his advantage than it would be if he lacked both money and many weeks to prepare his case.

In the case at bar, appellant was represented by

counsel appointed by the court to defend him, he having no money with which to retain counsel for himself. He did, however, procure expert witnesses who testified on his behalf. No showing is made that, even though he had had more time within which to prepare his case, he could have procured other or abler expert witnesses to testify for him. His counsel subpoenaed a large number of witnesses, who were present at the trial. Appellant had the benefit of experienced counsel who devoted a large amount of their time to his service and represented him conscientiously and with ability. They have amply fulfilled their obligation both to the court and to their client. The trial court did not err in overruling appellant's motion for a new trial or in arrest of judgment.

Appellant assigns error upon some other matters in connection with the evidence. These assignments are either covered by the discussion of other matters presented or are wholly without merit.

Next appellant contends that the court erred in instructing the jury, and in failing to give his proposed instructions.

Instruction No. 5, to which appellant excepted, reads as follows:

"I will now instruct you in the law applicable to the defendant's plea of insanity and mental irresponsibility. Every man is presumed to be sane and mentally responsible and to intend the natural and usual consequences of his own acts. As the law presumes a man to be sane and mentally responsible until the contrary is shown, I instruct you that the burden of proof of insanity and mental irresponsibility as a defense to a crime is upon the defendant to establish by a preponderance of the evidence, as that term is defined in these instructions, and unless insanity and mental irresponsibility are established by a fair preponderance of the evidence, the presumption of sanity and mental responsibility must prevail."

Appellant, while admitting that the burden to prove his mental irresponsibility rested on him, contends that, by the testimony which he introduced, he successfully bore this burden, and that the instruction was, in some particular which he does not point out, insufficient.

In the case of *State v. Clark*, 34 Wash. 485, 76 Pac. 98, 101 Am. St. 1006, this court approved an instruction very similar to that above quoted, and we find no reason for departing from the rule therein laid down.

By instruction No. 6, the court informed the jury that a person might be partially insane on all subjects and yet, if he have sufficient capacity to distinguish right from wrong with reference to the offense committed, be criminally responsible therefor. The jury was also told that one might be mentally sound upon almost all subjects, but upon some particular matter irrational and therefore "irresponsible within the limits of his aberration." Appellant excepted to this instruction for the reason that it required

". . . the jury to select those subjects upon which the defendant is mentally sound and those things upon which the defendant is mentally unsound, which is not the province of the jury; but the province of the jury is to determine whether he knows right from wrong in regard to the particular acts at the time of committing the crime.

"And further, that said instruction is not the law in this: that a defendant may be mentally sound upon all subjects except one, thereby leaving out monomania."

The instruction is not obnoxious to appellant's exception. The jury was not required thereby to discriminate between subjects upon which the defendant was sane and others, if any, upon which he should be held irresponsible. The jury was told that appellant's mental state was a question of fact, and that, if one charged with crime did not have the mental power to

462

choose between right and wrong with reference to the particular act charged, he was of unsound mind, and if such affection was the efficient cause of the act, and if he would not have committed the act but for that affection, he should be acquitted. Of course no one instruction must be considered by itself, but all must be taken together, and, considered as a part of the whole, we find no error in the instruction now under discussion.

Appellant next complains of instructions Nos. 7 and 8, which cover the matter of intoxication. The first part of instruction No. 7 paraphrases the law which is found in Rem. Rev. Stat., § 2258. The instruction continues:

"But I charge you gentlemen that, in dealing with such a condition, you ought to use great caution not to give immunity to persons who commit crime when they are inflamed by intoxicating drink. You must discriminate between the conditions of mind merely excited by intoxicating drink, and yet capable of forming a specific intent to take life, and such a prostration of the faculties as renders a man incapable of forming the intent or of deliberate or premeditation. If an intoxicated person has the capacity to form an intent to take life, and conceives and executes such intent, it is no ground for reducing the degree of his crime that he was induced to conceive it, or to conceive it more suddenly, by reason of his intoxication."

Appellant bitterly complains of the first portion of the quotation, particularly of the use of the words "great caution." In this connection the text found in 16 C. J. 108 is important. It is there stated, referring to the matter of an instruction on intoxication:

"It is merely stating a truism to say that great caution is necessary in the application of this doctrine, and those whose province it is to decide in such cases should be satisfied beyond a reasonable doubt, from all the facts and circumstances before them, that the unlawful

act was committed by the accused when his mental condition was such that he did not know that he was committing a crime, and also that no design to do the wrong existed on his part before he became thus incapable of knowing what he was doing. There is great danger that undue weight will be attached to the fact of drunkenness. Where it is shown in a criminal case, courts and juries should see that it is used only for the purposes stated and not as a cloak or an excuse for crime."

We are satisfied that the law is as set forth in the text quoted, and, that being true, it was not error to so instruct the jury. Appellant argues at length that his rights were prejudiced by this instruction, but, considering the difficulty of informing the jury in concise language as to the law which they should follow in considering such a complicated question as the effect of intoxication in the case of one charged with crime, we. find no error in the instruction complained of.

 Next appellant complains of instruction No. 8, contending that, by the instruction, the court took away from the jury the consideration of any defense which appellant might have based upon his intoxicated condition at the time of the homicide. The instruction deals with the question of insanity produced by intoxication, and must be considered in connection with instruction No. 7, which immediately preceded it.

We find in 16 C. J. 109 the following:

"Temporary insanity, that is to say, the mental excitement or frenzy produced by immoderate drinking, does not exempt from responsibility where the accused voluntarily became intoxicated, although by statute in some states it may be considered in mitigation of the penalty. This is merely another way of stating the general rule that voluntary drunkenness is no excuse. On the other hand, however, long continued habits of intemperance producing permanent mental disease amounting to insanity, or so weakening and impairing

the mind that one committing an offense has not mind enough at the time to know right from wrong, relieves him from responsibility under the law, the same as insanity arising from other causes.''

Considering this instruction together with the others given and in the light of the evidence, it is clear that the jury could not have been misled thereby, and that appellant suffered no prejudice therefrom.

Finally appellant complains of the failure of the trial court to give certain of his proposed instructions. We have carefully read appellant's requested instructions, and find that, in so far as they correctly stated the law, they were covered by the instructions which the court gave. Many of appellant's requested instructions contained incorrect statements of the law and should not have been given. We are satisfied that appellant's assignments of error based upon the instructions given or proposed instructions refused are not well taken.

In view of the importance of the case to appellant, we have searched the record with care and considered all the matters which the indefatigable industry of counsel has presented. We find nothing in the record which entitles appellant to a new trial, and the judgment appealed from is affirmed.

MITCHELL, MAIN, STEINERT, and MILLARD, JJ., concur.