[No. 31492. Department Two. April 19, 1951.]

THE STATE OF WASHINGTON, *Respondent*, v. GRANT
E. RIO, *Appellant.*[1]

[1] Reported in 230 P. (2d) 308.

*H. Earl Davis*, for appellant.

*Lawrence Hickman, S. R. Clegg,* and *Ennis & Herman,* for respondent.

MALLERY, J.—In count I of the information filed in Whitman county, Grant E. Rio was charged with the first-degree murder of Joe Roberge, while engaged in the crimes of burglary and larceny. By trial amendment, the reference to burglary and larceny was stricken.

In count II of the information, the defendant was charged with the first-degree murder of James Beckner, while engaged in the commission of the crimes of burglary and larceny.

The defendant pleaded not guilty and entered a special plea of insanity and mental irresponsibility to both counts. The jury returned a verdict of guilty with a special finding that the death penalty should be imposed on both counts. The defendant appeals.

The appellant is a single man, twenty-seven years of age. He and Joe Roberge were employed on the farm of James Beckner, about one hundred twenty miles from Spokane. He was on good terms with both Roberge and the Beckners. He and Roberge slept upstairs in the Beckner home, took their meals in the kitchen, had free use of the washroom and hallways, but otherwise were not given the run of the house, although they were invited upon occasion to play cards in the evening in the Beckners' living room.

For a number of days prior to the commission of the crime on December 31, 1949, the appellant had been in Spokane on a protracted drinking spree. He returned to the farm in a taxi on the evening of that day. He had been drinking heavily in the taxi. The Beckners and Roberge had spent the evening playing cards, and had retired at about ten p. m. The appellant had retired earlier. Sometime later the appellant went downstairs, secured and loaded Beckner's shotgun, went back upstairs and shot and killed Roberge in his sleep. He then went back downstairs. Mrs. Beckner had been aroused by the noise of the shot and saw a streak of light under their bedroom door, which was closed. She awakened her husband, the door was then opened, and appellant appeared with the shot gun in his hands, which he levelled at the Beckners, who were still in bed. Mrs. Beckner ran into a closet, but the appellant ordered her out, stating that he was going to kill them both. She inquired about the sounds coming from upstairs, and the appellant said, "That's Joe I killed the ..............." She suggested that they try to help him, but he deterred her with the statement, "He'll be dead in a few minutes." He then permitted Mrs. Beckner to leave the room, and fired the shot that killed James Beckner, as she emerged therefrom. She ran from the house, and traversed several miles of fields to a neighbor's home, where she related what had taken place. Meanwhile, the appellant took the Beckner farm truck and drove into Washtucna, where he gave himself up to the authorities.

None of these facts were denied, and on the trial the appellant relied solely on his special plea of insanity and mental irresponsibility.

Appellant's assignments of error No. 1, challenging the sufficiency of the evidence, No. 21, assigning error in receiving the verdict, No. 22, denying motions for arrest of judgment and for a new trial, and No. 23, in entering judgment and sentence, are all dependent upon our rulings on the more specific assignments of error, and call for no separate treatment herein.

▆ In assignment of error No. 20, appellant contends that it was misconduct of the prosecuting attorney to state, in his final argument to the jury, that:

" 'Counsel said we failed to prove a motive. Let's see if there was a motive. I am not saying the evidence proved any particular motive, but was there a motive in this case that may have existed, and may help you in deciding this case. Counsel says there wasn't. Let's consider the evidence for a moment. Suppose I were to tell you that the motive was rape—let's see how that would fit the facts in this case—' "

Counsel objected to the statement, the court instructed the jury to disregard it, and there was no motion for a mistrial.

This statement of the prosecutor was made in answer to appellant's counsel, who had stressed the state's failure to prove a motive for the crime. It was not an attempt to evade former rulings of the court by attempting to get incompetent and excluded evidence before the jury, as was done in the cases cited by appellant. On the contrary, it falls within the rationale of those cases which permit a reply to the argument of counsel on a subject opened up by him. *State v. Engstrom,* 86 Wash. 499, 150 Pac. 1173; *State v. Wright,* 97 Wash. 304, 166 Pac. 645; *State v. Benton,* 150 Wash. 479, 273 Pac. 731; *State v. Birch,* 183 Wash. 670, 49 P. (2d) 921; *State v. Lindsey,* 192 Wash. 356, 73 P. (2d) 738; *State v. Johnson,* 195 Wash. 545, 81 P. (2d) 529.

We are not required to commend the prosecutor's statement in order to hold that it was not prejudicial error requiring a new trial.

Appellant's assignments of error Nos. 4, 5, 6, 7, and 8 are directed to the court's refusal to strike the reference to burglary in count II of the information, and to the instructions given by the court on the subject of burglary. They are treated together in appellant's brief, and will be so treated here.

It is appellant's theory that there was no evidence of burglary, because he was domiciled in the Beckner home, and that there was no evidence of an intent to commit any crime in the Beckner bedroom, other than the killing itself.

Rem. Rev. Stat., § 2392 [P.P.C. § 117-5], provides, among other things, the following:

"The killing of a human being . . . is murder in the first degree when committed . . .

"3. Without design to effect death, by a person *engaged in the commission of, or in an attempt to commit,* . . . *burglary* . . ." (Italics ours.)

Rem. Rev. Stat., § 2579 [P.P.C. § 113-77], provides, among other things:

"Every person who, with intent to commit some crime therein shall . . . enter the dwelling-house of another . . . or part thereof, or a room . . . shall be guilty of burglary in the second degree . . ."

It is not contended that the appellant was an invitee or permitted access to the Beckners' bedroom, upon any occasion, as was the case of the living room when he was invited to play cards. The appellant committed an assault upon Mrs. Beckner with a shotgun, after entering the bedroom, by threatening to kill her. These facts meet the requirement of the statutes.

Appellant contends that for a person to be guilty of burglary, the breaking and entering must be of the "dwelling-house of another," and that the entire house occupied by the Beckners, Roberge and himself, was his

dwelling. This, of course, is contrary to the facts. The area to which the appellant had free access was limited, and the fact that the appellant was living in one part of the premises does not establish such a right in the dwelling as to preclude his prosecution and conviction for the burglary of another part.

It is a general principle of law that,

". . . if a servant, guest, or other person, being lawfully in a house, enters a room which he has no right to enter, with felonious intent, by breaking or opening an inner door, it is as much burglary as if he had entered by breaking an outer door or window." 12 C. J. S. 671, § 6.

It is stated in 12 C. J. S. 675, § 11, that

". . . a servant, or boarder, or joint occupant of a room, . . . is guilty of burglary if he exceeds his rights either with respect to the time of entering or the room into which he enters; and a servant, or a guest or boarder, with the right to be in the house, may be convicted of burglary on proof that he broke and entered at a time or place beyond his authority."

In *State v. Corcoran*, 82 Wash. 44, 143 Pac. 453, the defendant was convicted of burglary when he entered his master's store outside of business hours, even though his master had given him a key to the premises, because it was held the defendant's right to entry was restricted and not unlimited, and that the master had limited his right of entry to the premises to store hours. In that case the court applied the principle that a person is guilty of burglary if he exceeds his rights with respect to the time of entering.

In *U. S. v. Bowen*, Fed. Cas. No. 14,629, it was held that a servant lodging in a house is guilty of burglary if he breaks and enters the sleeping room of his mistress with intent to kill her. In the case of *Page v. State*, 170 Tenn. 586, 98 S. W. (2d) 98, Wharton's Criminal Law, 1279, § 976, is quoted with approval:

" 'A burglary may be committed by a breaking on the inside; for though a thief enter the dwelling house in the nighttime, through the outer door left open, or by an open window, yet if, when within the house he turn the key, or unlatch a chamber door, with intent to commit felony, this

is burglary. Hence where a servant, who sleeps in an adjacent room, unlatches his master's door and enters his apartment, with intent to kill him, or to commit a rape on his mistress, it is burglary.' "

See, also, *State v. Howard*, 64 S. C. 344, 42 S. E. 173.

Since we do not agree with appellant's theory of the law on the subject of burglary, we find that this series of assignments of error are not well taken.

In assignment of error No. 3, the appellant contends that the court violated Washington constitution Art. IV, § 16, which provides:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

This error is based upon the following incident:

"Q. Now with reference to the events that occurred in the Beckner bedroom, you said you saw the defendant enter the bedroom at that time and he had a gun in his hand and he threatened— Mr. Davis: This is all a part of their case in chief— The Court: The objection is overruled. I want to hear this brought out without you continually objecting that it is immaterial. I realize to you it is not material but I can't see it that way, to me it is material and I want to hear it brought out in an orderly manner—the first few words are repetition, I admit that—"

█ These remarks were addressed to counsel in ruling upon appellant's objection. They were not made to the jury, and do not indicate that the court believed or disbelieved the testimony being elicited. That the court may give his reasons for ruling upon an objection, is well settled in this state. *State v. Mann*, 39 Wash. 144, 81 Pac. 561; *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841; *State v. Adamo*, 128 Wash. 419, 223 Pac. 9; and *State v. Elder*, 130 Wash. 612, 228 Pac. 1016.

To be a comment on the evidence within the purview of the constitutional prohibition, the jury must be able to infer from what the court said or did that he personally believed or disbelieved the testimony in question. *State v. Brown*, 19 Wn. (2d) 195, 142 P. (2d) 257; *State v. Hart*,

26 Wn. (2d) 776, 175 P. (2d) 944; and *State v. Clayton,* 32 Wn. (2d) 571, 202 P. (2d) 922.

The assignment is without merit.

Appellant's assignments of error Nos. 2, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19 are directed to what he asserts was a mistaken application of the law regarding the defense of insanity and mental irresponsibility. They go to the admission of testimony, over objection, to the exclusion of testimony offered, to instructions given, and to instructions refused. They were treated together in appellant's brief and argument before the court, and will be so treated herein.

It is appellant's position that he was insane and mentally irresponsible at the time of the commission of the crime, notwithstanding his condition of mind was voluntarily produced by intoxicating liquor and was temporary in nature.

There are two statutes that have a bearing upon the law of insanity and mental irresponsibility as a defense for the commission of crime. One is Rem. Rev. Stat., § 2173 [P.P.C. § 133-1], which provides as follows:

"Any person who shall have committed a crime while insane, or in a condition of mental irresponsibility, and in whom such insanity or mental irresponsibility continues to exist, shall be deemed criminally insane within the meaning of this act. No condition of mind induced by the voluntary act of a person charged with a crime shall be deemed mental irresponsibility within the meaning of this act."

Insanity and mental irresponsibility, as used in the statute, have been construed as meaning the same thing. *State v. Schneider,* 158 Wash 504, 291 Pac. 1093, 72 A. L. R. 571. This condition of mind, under the terms of the statute, is not available as a defense if it was "induced by voluntary act of a person charged with a crime." The record is conclusive that appellant's condition of mind was produced by intoxicating liquor.

The other statute in point is Rem. Rev. Stat., § 2258 [P.P.C. § 112-11], which provides as follows:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any

particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent."

It may be noted in passing that the appellant was given the full benefit of the above statute in that evidence of his intoxication and state of mind was admitted in evidence, and the jury was properly instructed as to the effect they could give it on the question of appellant's *intent* in committing the crime.

■ The appellant's theory of the law is that his excessive use of alcohol had produced a toxic psychosis, which rendered him unable to distinguish between right and wrong. This is the test to which this state adheres when the defense of insanity is interposed. *State v. Craig*, 52 Wash. 66, 100 Pac. 167; *State v. Schafer*, 156 Wash. 240, 286 Pac. 833; and *State v. Maish*, 29 Wn. (2d) 52, 185 P. (2d) 486, 173 A. L. R. 382.

Toxic psychosis can be produced by causes other than intoxicating liquor, though appellant's witnesses showed it was so produced in this instance. Medically speaking, toxic psychosis is not the exact equivalent of drunkenness. Appellant, therefore, contends he had the right to prove, by medical and lay witnesses, that he was unable to distinguish right from wrong at the time of the killing, and that the court should have instructed the jury that such a state of mind was a defense to the crime. He asserts that it was error not to submit the issue of mental irresponsibility due to toxic psychosis to the jury. He contends that the court had no right to pass upon the question of whether he had made a *prima facie* case of mental irresponsibility as a matter of law, but was required to submit his theory of the case by reason of his special plea, even if the evidence was slight or incredible.

■ Commenting upon this latter contention of appellant, we think he miscontrues the citations he marshals in support thereof. The court is not required to submit instructions to the jury upon every theory requested by a defendant. It is true the court will not pass upon the weight

or credibility of the appellant's evidence, but, assuming that it is all true, he still must make a *prima facie* case as a matter of law to entitle him to instructions upon the theory.

As was said in *State v. Woods*, 163 Wash. 224, 1 P. (2d) 219:

"Appellant is not entitled, as she contends, to have instructions upon her theory of the case, unless the instructions are justified by the evidence adduced. Nor will a reversal be directed because of the refusal to give an instruction, unless it is strictly and entirely the law applicable to the facts, hence the court did not err in refusing to give same."

And in *State v. Huey*, 14 Wn. (2d) 387, 128 P. (2d) 314:

"Appellant was not entitled to have submitted to the jury, for any purpose, the question of his claimed mental irresponsibility at the time of the alleged act."

■ The record shows that the appellant did not make a *prima facie* defense of insanity. He relies upon the medical testimony of Dr. Lambert, an eminent psychiatrist, who examined him ten days after the offense. In the absence of the jury, the witness was freely permitted to testify as to his examination and conclusions, so that the court could determine if his evidence should be admitted before the jury.

There is considerable of this evidence that could be quoted, but it may be fairly summarized in the conclusion that, at the time of the offense, the appellant could not form a criminal intent nor distinguish right from wrong by reason of a mental condition, which the doctor designated as toxic psychosis. He distinguished this from drunkenness, though, in this instance, it was conclusively determined that it was caused by a drunken spree. His testimony was unequivocal that, upon his examination of the appellant ten days later, at a time when the effects of the alcohol had worn off, he found nothing wrong with appellant's nervous system or mentality. It is true there was some academic testimony with regard to edema, which we gather is a permanent injury to the brain and nervous system caused by the excessive use of alcohol. We accept the medical con-

clusion of the doctor that permanent insanity can be produced by the protracted and excessive use of alcohol as a medical fact, but find it has no significance as to the law in the instant case.

The appellant, while conceding that drunkenness is not a defense, contends that this medical fact brings him under the purview of *State v. Miller*, 177 Wash. 442, 32 P. (2d) 535, which cites, with approval, 16 C. J. 109, § 86, as follows:

" 'Temporary insanity, that is to say, the mental excitement or frenzy produced by immoderate drinking, does not exempt from responsibility where the accused voluntarily became intoxicated, although by statute in some states it may be considered in mitigation of the penalty. This is merely another way of stating the general rule that voluntary drunkenness is no excuse. On the other hand, however, long continued habits of intemperance producing permanent mental disease amounting to insanity, or so weakening and impairing the mind that one committing an offense has not mind enough at the time to know right from wrong, relieves him from responsibility under the law, the same as insanity arising from other causes.' "

The rule of *State v. Miller, supra,* goes no farther than to hold that, if a *permanent* insanity is produced by intoxicating liquor, such insanity is an excuse. Obviously, to be classed as permanent, the insanity must remain after the intoxication has worn off. Appellant's testimony did not show this condition to exist in the instant case.

This brings him within the rule of *State v. Huey*, 14 Wn. (2d) 387, 128 P. (2d) 314, wherein we said:

"In the instant case, so far as this record shows, appellant was normal, or at least there was nothing to indicate he was insane or mentally irresponsible, before or after the date of the alleged act. If he was mentally irresponsible at the time of the act charged in the information, such condition of his mind was induced solely by voluntary intoxication. This being true, and the crime charged not involving the element of intent, appellant was not entitled to have submitted to the jury, for any purpose, the question of his claimed mental irresponsibility at the time of the alleged act."

In the instant case, there is no complaint as to the instruction given on *intent* as affected by intoxication. We think the trial court was right in refusing appellant's requested instructions on insanity, and in excluding the testimony on the medical theory of toxic psychosis.

We do not agree with appellant's theory of the law upon which his assignments of error are predicated. Accordingly, we find the court did not err as appellant contends.

The judgment is affirmed.

SCHWELLENBACH, C. J., ROBINSON, GRADY, and HAMLEY, JJ., concur.

June 8, 1951. Petition for rehearing denied.

